[No. 5698.]

BOARD OF COUNTY COMMISSIONERS OF THE CITY AND
COUNTY OF DENVER v. LUNNEY.

1. **Petition in Intervention—Petitioner Withdrawing**—One whose petition to intervene in the district court was denied may be permitted to withdraw it in the supreme court.—(413)

2. **Construction of Statutes**—The object to be accomplished by the statute is the thing to be first sought, and to effectuate this, general words may be restrained and those of narrower import extended. The intention of the act prevails over the literal import of the words used.—(415)

It is presumed that the legislature is acquainted with existing legislation and that no change which is not expressly declared is intended.—(418)

3. **Statutes Construed**—A statute (Laws 1899, Ch. 134, Sec. 8) provided that the county clerks in the several counties should receive an annual salary "as their only compensation." This statute being in force, the county of Adams was erected out of territory previously belonging to the county of Arapahoe, and the latter county was changed to the city and county of Denver. A later statute (Laws 1903, Ch. 79, Sec. 5) provided that the county clerk of Adams county should cause the records in the office of the county clerk and recorder of the city and county of Denver pertaining to the county of Adams to be copied, and that the rate of compensation should be fixed by the board of county commissioners of Adams county "at not to exceed ten cents per folio." It was held that the statute first quoted was a contract between the county clerk and the people fixing the maximum compensation for all services to be performed by him during his incumbency; and that the later statute was not intended to afford the county clerk of Adams county opportunity to gain a profit to himself in addition to the prescribed salary, but to allow only the actual necessary expense of the work, not exceeding the rate specified; and that the county commissioners of Adams county had by resolution fixed the rate of compensation at ten cents per folio was not important.—(417-419)

4. **Counties—Exhibition of Claims Against**—The statute (Mills' Stat. Sec. 800) provides that no account shall be allowed by the board of county commissioners, "unless made out in separate items and the nature of each item stated." A bill which stated an indebtedness claimed as "To transcribing that part of the records of the former county of Arapahoe affecting

the present county of Adams as follows, General Real Estate Records 311,419 folios at 10 cents $31,141.90" was held not a compliance with the statute.—(419)

5. **Power of Board of County Commissioners to Rescind Action** — The board of supervisors of the city and county of Denver had assumed to act as a board of county commissioners for that corporation, and for a considerable time conducted the affairs of the county. June 23, 1905, they were ousted by a judgment of the supreme court. Four days later, having in the meantime filed a petition for rehearing, which was denied on the 10th of July thereafter, they assumed to allow bills against the county to an amount exceeding $30,000. The bills upon which the allowance was made were not framed in conformity with the statute, the county was not in fact liable, the rights of third persons had not intervened, and warrants had not been signed by the chairman of the board as the statute required. Held, that the action was not final in such sense as to prevent reconsideration by the board of county commissioners de jure during the same month, and reference of the matter to the county attorney for his opinion.—(424)

6. **Appeals—Rehearing**—It is not to be presumed that a rehearing will be granted.—(422)

7. **Cases Overruled, Explained or Distinguished**—The dictum in Garfield County v. Leonard, 3 Col. App. 581, that reason and authority are against the proposition that subsequent board can review a discretionary act of its predecessor, and the decision in People v. Reid, 11 Colo. 138, distinguished.—(424-426)

8. **Evidence—Hearsay**—Plaintiff asserting against the county, a claim, a percentage, only, of which was chargeable against such county, to be ascertained by a board of appraisers, was permitted to testify that in determining the amount chargeable against each county he "obtained his figures from the appraisers." Held incompetent; that if there was no record of the action of the board of appraisers the members of the board should have been called.—(426)

*Error to Denver District Court*—Hon. John I. Mullins, Judge.

Mr. Fred W. Parks, Mr. William B. Tebbets, and Mr. James H. Brown, for plaintiffs in error.

Mr. Milton Smith, and Mr. Charles R. Brock, for defendant in error.

This is a proceeding in mandamus, instituted by defendant in error against the plaintiffs in error, to compel them, as the board of county commissioners of the city and county of Denver, and as the chairman and clerk of said board, to draw warrants in his favor in the aggregate sum of $30,231.34, which amount he-claims is due him from said city and county in having transcribed that portion of the records of what was formerly old Arapahoe county, which relates to property in the present county of Adams.

The action appears to be based upon, and, in order to have the contentions finally settled, calls for the proper construction of sec. 5 of the act of 1903 amending the act of 1901, which created the county of Adams. That portion of sec. 5 concerning the present contention reads as follows:

"Sec. 5.  That section 10 of said act be and the same is hereby amended so as to read as follows:

" 'Section 10.  The County Clerk of the County of Adams shall, as soon as practicable, and within six (6) months from the fifteenth (15) day of April, A. D. 1903, have transcribed all records in the office of the County Clerk and Recorder's office of the City and County of Denver that pertains to the said County of Adams, into proper record books, to be provided by the said County of Adams, within the time herein designated.

" 'The County Clerk and Recorder and the commissioners of the City and County of Denver shall afford every reasonable opportunity and facility for transcribing such records.  The cost of transcribing the said records, and the manner of paying therefor, shall be determined as is provided for other matters of revenue in section 9 hereof.  Provided that the rate of compensation to be paid for transcribing said records shall be fixed by the Board of County Com-

missioners of said Adams County, at a rate not to exceed ten cents per folio.' "

It appears from the record that after the passage of the amended act of 1903 concerning Adams county the defendant in error (who, after the creation of Adams county, had been appointed its county clerk and recorder, qualified as such, was thereafter, at the 1904 election, elected his own successor) proceeded, under the provisions of said act, to have the transcripts of said records made. Previous to entering upon the discharge of said duty as provided by the amended act of 1903, the board of county commissioners of Adams county passed and caused to be entered of record the following resolution:

"Resolution by Board of County Commissioners. Resolved, that C. E. Lunney, County Clerk of the County of Adams, be and he is hereby authorized and directed, as soon as practicable and within six months from the 15th day of April, 1903, to procure, to be transcribed, all records in the office of the County Clerk and Recorder's office of the City and County of Denver, that pertain to the County of Adams into proper record books.

"The compensation for furnishing said records shall be as provided by law; folio work is hereby fixed at 10 cents per folio.

"The manner of payment shall be as provided by law."

Thereafter, the defendant in error proceeded to have said work done; whether he let it by contract or employed people to perform such labor by the day, folio or in what manner, is not shown by the record. The position of the defendant in error, as we understand it, being, that pursuant to said law and resolution it was his right to have it done in such manner and at such price or prices as he saw fit, he being the county clerk and recorder of Adams county, and

the person designated by law to have it done, and was entitled to be paid therefor at the rate of ten cents per folio, regardless of the actual cost to him for such work.

It appears he first caused the tax sales and some other records to be transcribed; presented bills therefor to the board of supervisors of the city and county of Denver—acting as a board of county commissioners—which were audited by them and the sum of $14,937.35, out of the total of $15,693.30, was paid by the city and county of Denver for such transcripts, the difference being paid by Adams county. He then caused the remainder of said records to be transcribed; according to his testimony, the amount to be paid him, at the rate of ten cents per folio, would be $47,451.50, of which, according to his claim, the share of the city and county of Denver amounted to $45,168.69, less the $14,937.35 paid, leaving a balance due him from the city and county of $30,231.34.

On May 5, 1905, he presented to the auditor of the city and county of Denver five bills in the aggregate of said amounts, which the auditor, on May 8, 1905, attempted to audit, approve and allow, although it is not claimed the actions of the auditor were binding upon any one.

On the 27th day of June, 1905, he presented each of these bills to the board of supervisors of the city and county of Denver, which board were at that time still pretending to act as a *de facto* board of county commissioners for the city and county, and it appears they passed the following resolution upon said last date:

"RESOLVED, That the following bills be and the same are hereby approved, to wit:

C. E. Lunney..........$15,602.35
C. E. Lunney..........  8,459.39
C. E. Lunney..........  1,048.13

C. E. Lunney.......... 4,404.68
C. E. Lunney.......... 716.59

and that warrants be drawn upon the treasurer for the same in favor of C. E. Lunney upon the special levy fund for transcribing the records for Adams and Arapahoe counties."

It is proper to state the city and county of Denver, for the purpose of raising a fund to pay the cost of transcribing said records, had made a special levy for the year 1904 of four-tenths of a mill to be used in paying for the transcription of such records, which would create a fund for this purpose, something in excess of $45,000.00; the payment of $14,937.35 to the defendant in error had been made out of this fund.

At the general election, held in November, 1904, plaintiffs in error, Uzzell, McCarthy and Lawson, were elected as members of the board of county commissioners of the city and county of Denver; received certificates of such election, and there is no question raised that they were not at all times qualified to fill the offices to which they had been elected.

On January 10, 1905, being the date of the commencement of the term of office to which they had been elected, they attempted to qualify by giving bonds, taking the oath of office, and, on the same day, demanded from the board of supervisors possession of the office of board of county commissioners of the city and county of Denver, the books, documents and all property relating thereto, with which demand the board of supervisors refused to comply; *quo warranto* proceedings were brought in the district court of the city and county of Denver, against the board of supervisors, to oust them from such offices, in which case, entitled *The People, etc., v. Stoddard et al.,* 34 Colo. 200, the decision of this court was rendered on the 23d day of June, 1905, reversing the judgment of the court below and rendering judg-

ment in favor of the plaintiffs in error awarding to them the right to such offices; motion for rehearing was filed July 3, 1905; denied upon the 10th day of July, 1905; upon which last date the plaintiffs in error, Uzzell, McCarthy and Lawson, were let into the enjoyment of their offices.

On July 17, 1905, the defendant in error presented to them, as such board, a demand in writing for the issuance of warrants to him for a balance of $30,231.34, alleged to be due for such transcripts, with which they refused to comply, whereupon the defendant in error, on July 19, 1905, filed his petition in the district court of the city and county of Denver praying for an alternative writ of mandamus to compel said board, its chairman and the clerk of said board, to issue to him warrants for said amount, in which petition he set forth all the facts above stated (except those regarding the Stoddard case) and others tending to show a full compliance, on his part, with the other provisions of said act, covering the adjustment of the fees between the two counties.

An alternative writ of mandamus was issued, made returnable July 26, 1905, upon which date the plaintiffs in error made return claiming: first, a defect of parties in that Adams county, or its board of commissioners, were not made plaintiffs along with its clerk; second, that said petition did not state facts sufficient to constitute a cause of action; third, that as such clerk it was the duty of Lunney to make such transcripts; deny that Lunney did so furnish the transcripts for the county of Adams in any manner; deny that the board of county commissioners of Adams county fixed the compensation to be paid Lunney at the rate of ten cents per folio or otherwise; deny all other facts alleged to have been done by him and all matters pertaining to the apportionment, the basis of the percentage upon which it was to be made,

and deny any further sum was due him; aver that the amount theretofore paid was without warrant of law or by anyone authorized to make payment; aver the pretended action, taken, on June 27, 1905, by the board of supervisors, was void for the reason the plaintiffs in error were the lawful board; allege that prior to the commencement of this action, at a meeting of said board lawfully held at the court house, etc., on the ........ day of July, 1905, the plaintiffs in error adopted the following resolution:

"Whereas, by resolution dating on or about June 27, 1905, the Board of Supervisors of the City and County of Denver, then acting as a Board of County Commissioners in and for the said city and county, adopted a resolution known as Resolution Number 14, introduced by Aronson, resolving that among others, the following bills be approved, to wit:

"C. E. Lunney, $15,602.35; C. E. Lunney, $8,459.39; C. E. Lunney, $1,048.13; C. E. Lunney, $4,404.88; C. E. Lunney, $716.59, and that warrants be drawn upon the Treasurer for the same in favor of C. E. Lunney upon the Special Levy fund for the transcribing the records for Adams County and Arapahoe Counties.

"And also on motion of Aronson, seconded by Smith, that said resolution number 14 introduced by Aronson *in re* bills of C. E. Lunney for $30,231.34 for transcribing the records of Adams and Arapahoe Counties be adopted, was carried, and whereas it is believed that the interests of the taxpayers of the County require that these bills should be investigated and reported upon by the County Attorney.

"Now, therefore, be it resolved that both the said resolutions and motions be reconsidered and the treasurer of said city and county be instructed to withhold payment of any warrant or warrants issued

under said resolutions, pending investigation and report herein called for, and

"Further, that the matter be referred to the County Attorney for a report to this Board in the premises at his earliest convenience."

Allege that, although said Lunney seeks to recover over $30,000.00 and has received $14,000.00, which is in excess of the full amount of the salary coming to him in his official capacity, said Lunney has not paid any portion of said $14,000.00 to said county treasurer of Adams county, and he will not pay any part of said $30,000.00 into the county treasurer of Adams county, pray writ be quashed, etc.

Replication was filed denying certain allegations of the answer; allege, the answer did not state facts sufficient to constitute a return; that the replication be treated as a demurrer; admits the passage of the resolution in July, 1905; deny the respondents had the power or legal authority to reconsider the action of their predecessors or to perform any act investigating the same.

On July 31, 1905, William R. Freeman filed his petition to intervene in said cause, wherein, after stating somewhat the history of the transaction, he alleged in substance that said Lunney had, in April, 1903, entered into an oral agreement of partnership with him as to the work of making said transcripts with the usual terms as to division of profits and losses; claimed, after the commencement of said work, under the partnership agreement, Lunney attempted to repudiate it and declined to pay him, Freeman, anything, etc.; alleged that said Lunney, by means of false representations, etc., had secured about $15,000.00 from the city and county of Denver thereon; had collected some moneys from Adams county under similar conditions; had applied the same to his own use; in this action he was attempt-

ing to collect $30,000.00 more with a view of appropriating the same to his own use without any intention of paying it to Adams county; alleged the sum claimed by Lunney for said work when completed and bills properly allowed, would be largely in excess of the cost thereof and that there would be a substantial profit which the said Freeman was entitled to one-half of; alleged the insolvency of said Lunney, prayer for an injunction, etc. The plaintiffs in error moved to dismiss the action; motion denied. The right of petitioner, Mr. Freeman, to intervene was likewise denied; and the court, over the objections of the plaintiff in error upon the same date proceeded with the trial of said cause, and, after the hearing of evidence and argument of counsel, ordered a peremptory writ of mandamus to issue compelling the issuance and delivery of said warrants, from which judgment a writ of error was sued out of this court; *supersedeas* issued.

Mr. Justice Hill delivered the opinion of the court:

While this cause has been pending here, Mr. H. S. Class, the present county clerk and recorder of Adams county, filed his petition herein seeking to be substituted as the defendant in error, in which he prayed the benefit of the judgment, secured by the defendant in error in the lower court, go to him in his official capacity as the present county clerk and recorder of Adams county; thereafter, through counsel, he asked leave to withdraw same, which leave is granted. The evidence shows the work was done and completed while the defendant in error, Mr. Lunney, was the county clerk and recorder of Adams county, and by the construction we have given the statute neither the county of Adams, nor its present clerk,

can have any interest in the result of this particular litigation.

The first error assigned for our consideration, is, the court erred in denying the application of Mr. Freeman to intervene. This can be disposed of with the statement that at the time of the oral argument in this court, Mr. Freeman appeared by counsel and asked leave to withdraw his petition for intervention. We see no reason why this should not be done, and it is so ordered.

Some nineteen other assignments of error have been reserved in the record, but counsel in their printed briefs, as well as in oral argument, have confined themselves to three principal questions: First, the action was brought by the defendant in error in his individual capacity without joining with him the county of Adams, and for his personal use and benefit; the amount claimed being in excess of his salary as county clerk and recorder, under the constitution and salary act, for which reason he was not entitled to recover for this work in excess of his salary; second, that no verified itemized account was ever presented to the plaintiff in error for audit and allowance, as provided for by law, and until that was done and it was allowed, no action of this kind could be maintained, "after the passage of the resolution by the board reversing the former action of the board of supervisors"; third, that incompetent evidence was admitted over the objections of the plaintiff in error.

Many of the questions raised can be eliminated, and while this cause could properly be disposed of by deciding only one line of the contentions, yet from the extremely different views taken by counsel upon the principal question we have thought it proper to place our construction upon the statute in dispute to

avoid having the main contention again brought to this court for review.

The defendant in error, after the adoption of sec. 5 of the amended act of 1903, appears to have proceeded upon the assumption that the act intended that he, by being the then county clerk and recorder of Adams county, should have performed the work of transcribing the records called for, and that he was entitled to collect and receive therefor such rate as might be fixed by the board of county commissioners of the county of Adams not to exceed the maximum rate provided by the act, and the difference between the amount necessary to be paid to have the work done and its actual cost, if any, should belong to him as his profit, and as the county commissioners of Adams county had fixed the rate at ten cents per folio he was entitled to make that charge and have the work paid for at that rate to him, regardless of what the actual outlay and expenditure was for having this work done.

We do not think the statute should be given this construction, or that it was the intention of the legislature, by the passage of this section to adopt a provision whereby a county clerk (being an agent for his county) should be given a monopoly upon certain work to be done, being necessary by the creation of the new county, and provide in the act a system whereby he could speculate and thus secure or make a profit to himself, not only from his own county but also from the mother county, out of which his was created. We find many places in the statutes of this state wherein it is provided it is the duty of the county clerk to have certain things done; for instance, our statutes provide the county clerk shall cause to be published certain election notices; he shall likewise cause to be printed certain lists of nominations preceding an election. The statutes further

provide that certain rates shall be paid for such publication, and it is left to the discretion of the county clerk, in certain instances, in what newspapers such notices and lists of nominations, etc., shall be published. In such cases, could it be held that the county clerk could make a contract with some particular paper to have these publications placed in that paper at certain rates, he himself make payment at the rate contracted, say a much smaller rate than that fixed by law; take an assignment of the claim; collect the legal rate and be entitled to the profit? We think the same rule should apply to this work as any other wherein it is provided the county clerk shall have certain things done.

In the interpretation of a statute the legislative purposes and object are always to be borne in mind, and an indispensable requisite is to first inquire what object was sought to be accomplished by it. The intent of the statute is the law, and general words may be restrained to it and those of a narrower import may be expanded to embrace it to effectuate that intent. —Sutherland Statutory Construction, § 218; *People v. May,* 9 Colo. 85; *Rogers v. People,* 9 Colo. 455; *Carlisle v. Pullman Car Co.,* 8 Colo. 327; *Omar v. Soper,* 11 Colo. 386; *Murray v. Hobson,* 10 Colo. 72; *Arapahoe County v. Hall,* 9 Col. App. 541. And as stated by Mr. Sutherland and quoted with approval by Mr. Justice Gabbert of this court in the case of *Brewer v. Harrison,* 27 Colo. 352: "The intention of an act will prevail over the literal sense of its terms." An unusual and extraordinary investiture of power should not be inferred from doubtful or ambiguous language found in a statute.—*People ex rel. Eaton v. District Court,* 18 Colo. 26.

The statute under consideration states: "The county clerk shall have transcribed all records, * * *" it does not say the clerk shall do this work,

but shall have it done. Neither does it say he shall be paid for it or be entitled to receive any sum, but the cost of transcribing the said records and the manner of paying therefor shall be determined as provided for other matters of revenue in sec. 9, provided that the rate of compensation to be paid for transcribing said records shall be fixed by the board of county commissioners of Adams county at a rate not to exceed ten cents per folio. We do not think this language clearly indicates any intention to allow the county clerk to have the rate fixed in the way of fees or was intended otherwise than to provide that the actual expenses necessary, not to exceed the maximum amount, could be paid for having this work done, and we find nothing in sec. 9 of the act indicating otherwise. The fact that the board of county commissioners of the county of Adams saw fit to pass the resolution above stated does not change the law. This resolution, taking into consideration the law under which they were acting, did no more than fix a rate above which Mr. Lunney could not go in having these transcripts made, and simply allowed him to enter into contracts or employ persons or make other necessary arrangements for having these transcripts made, and, if the actual expenditure was not that amount or was a smaller amount, then no greater amount than the actual amount so expended can be collected from the sundry counties for the work.

In this case the county clerk was an agent for the county; and certainly it was not intended that he should be allowed to speculate or secure any profit beyond his maximum salary and other legitimate expenses out of the funds of his principal. Neither do we think it was intended that Adams county should be placed in a position where it could speculate or secure a profit on this work from the city and county

of Denver, which is paying over ninety per cent. of the total.

At the same session of the legislature we find three other bills were passed on similar subjects, one concerning South Arapahoe county, which provides the city and county of Denver should have the records pertaining to that county transcribed, and the clerk of the mother county should cause to be advertised a notice for bids, etc., and should let the contract to the lowest responsible bidder.

In the case of territory taken from Adams county and added to Washington and Yuma counties to become binding, after a vote of Adams county, it was provided in each of these bills:

"The Board of County Commissioners of Adams County shall cause duly certified transcripts of record * * *, to be made * * * at the expense and under the directions of the Board of County Commissioners of said other counties."

In this case it states the county clerk of Adams county shall cause to be done, etc. In the case of South Arapahoe county could it be urged the county clerk of Denver could speculate in the matter, or in the case of Washington and Yuma counties, could it be said the board of county commissioners of Adams county could collect more than the actual expenditure therefor? We do not think so, and again must come back to the conclusion that in this case the legislature intended the county clerk of Adams county could have this work done to the best advantage under a system satisfactory to all concerned, and incur, upon behalf of the two counties, liabilities therefor to this extent, or make payment thereof and be reimbursed such amounts with two checks upon him: first, he could not go above the maximum fixed by the law; second, not to exceed the rate fixed by the board of county commissioners of

27

Adams county, which rate, fixed by the board, could not be greater than the maximum provided by law.

In addition, sec. 12 of our salary act of 1899 prohibits the defendant in error from receiving any additional compensation as such county clerk in excess of the maximum salary provided by that act.— *Larimer County v. Bransom,* 4 Col. App. 274; *Henderson v. Pueblo County,* 4 Col. App. 301; *Leonard v. Garfield County,* 8 Col. App. 338; *Walpole v. Pueblo,* 12 Col. App. 151.

As we view it, this act is a contract between him and the people, which fixes his maximum compensation for all services performed by him during the period of his incumbency in the office. We do not mean by this to say that the defendant in error, in case he performed a part of these labors himself, should not receive reasonable compensation therefor as a part of the expenses incidental thereto, or should not be reimbursed for all outlays and reasonable expenditure made or incurred by him in connection with having this work done, provided that the total is brought within the maximum provided for by law. In case he spent a part of his time in superintending this work, making his arrangements therefor, etc., we are of the opinion he should receive reasonable compensation therefor, but the total to be so paid him for his individual time should not exceed, with the fees received by him from Adams county as its clerk, the maximum salary for that office.

In the passage of an act it is presumed the legislature is acquainted with the laws of its state which apply to or affect the subject upon which it legislates. It is also presumed that the legislature does not intend to make any change in the existing law beyond what it expressly declares.—Sutherland Statutory Construction, vol. 2 (2d ed.), sec. 499; and when it provided the county clerk of Adams county should

have this work done it knew the amount of the salary to which he was entitled, and had it intended to increase it, it is presumed the act would have so stated.

Upon the second principal contention discussed, sec. 800, vol. 1, Mills' Ann. Stats., reads in part as follows:

"No account shall be allowed by the board of county commissioners unless the same shall be made out in separate items, and the nature of each item stated, * * * which account so made out shall be verified by affidavit; * * *"

While sec. 801 reads in part as follows:

"All claims and demands held by any person against a county shall be presented for audit and allowance to the board of county commissioners of the proper county, in due form of law, before an action in any court shall be maintainable thereon, * * *"

One of the bills presented by defendant in error to the board of supervisors of the city and county of Denver, while they were purporting to act as the board of county commissioners, reads as follows:

"Denver, Colorado, May 2, 1905.

"The City and County of Denver to C. E. Lunney.

"To transcribing that part of the records of the former County of Arapahoe affecting the present County of Adams, as follows:

General Real Estate Records, 311,419
    folios at 10c .....................$31,141.90
Due from Adams County.............. 1,498.20
Due from the City and County of Den-
    ver...............................$29,643.70
Less amount paid by the City and Coun-
    ty of Denver..................... 14,041.35
Balance due from City and County of
    Denver...........................$15,602.35"

The others were similar in form. These bills were presented to the board of supervisors, while they were purporting to act as a board of county commissioners. The only claim ever presented to the plaintiffs in error was as follows:

"Denver, Colorado, July 17, 1905.

"To Thomas A. Uzzell, Eugene McCarthy and William A. Lawson, constituting the Board of County Commissioners of the city and county of Denver, and

"To A. K. Vickery, *ex-officio* clerk of the board of county commissioners of the city and county of Denver.

"Demand is hereby made upon you and each of you for the issuance of warrants to me in the sums of fifteen thousand six hundred and two and 35-100 ($15,602.35) dollars, eight thousand four hundred and fifty-nine and 39-100 ($8,459.39) dollars, one thousand and forty-eight and 13-100 ($1,048.13) dollars, four thousand four hundred and four and 8-100 ($4,404.08) dollars, and seven hundred and sixteen and 59-100 ($716.59) dollars, respectively, the balance due from the city and county of Denver for transcribing that portion of the records of the former County of Arapahoe affecting the present county of Adams, which said bills were heretofore and on, to wit: this *27* day of June, A. D. 1905, allowed and approved by the board of supervisors of the city and county of Denver, performing the duties of the board of county commissioners.     C. E. LUNNEY."

This was served July 17, 1905, which is conceded was in no manner a compliance with the provisions of the statute.

Counsel for defendant in error, appreciating the force of this position, seek to avoid it by the contention that the claims of the defendant in error had

been presented to and allowed by the board of supervisors at a time when it was acting as a board of county commissioners, and introduced evidence which showed the supervisors did pretend to audit and allow these claims and ordered them paid, and they contend the act of the supervisors in allowing them is as binding on all parties concerned as any act of a board of county commissioners can be, and it was upon the allowance of these claims by the board of supervisors that this proceeding is based.   That tribunal, constituting the *de facto* board of county commissioners as the fiscal agents of the city and county, was clothed by the statute with ample and full authority to pass upon the validity of these claims, and their action, when in favor of a claimant, is not reviewable by the courts under our statute.

They further claim the legal right in the defendant in error to warrants upon the treasurer against the special fund was perfected under the conditions above stated, and cite some authorities in support of this position.

The plaintiffs in error, at the 1904 election, had been duly elected as the board of county commissioners of said city and county.   At the proper time in January, 1905, they attempted to qualify and secure possession of their offices; demands were made and refused; suits were instituted in the district court to settle that contention, which, ultimately, reached this court, in which action the decision of this court was rendered upon June 23, 1905.   On June 27, 1905, four days after this court had held they had no right to do so, the board of supervisors attempted to act in this matter by their purported allowance of these claims.

It is true, as contended by counsel, a motion for a rehearing was filed in that case on July 3, 1905, and denied on July 10th, during which time counsel

contend it was proper for the board of supervisors to continue to act as a *de facto* board of county commissioners; that the judgment of this court, under its rules, did not become final until July 10th, and for that reason the acts of the board should be held valid and was not subject to review by their successors. The judgment of this court gave to plaintiffs in error no new right or office to which they were not entitled, but simply awarded to them the right of possession to offices to which they had been elected by the people at the preceding election. It is not to be presumed this court will grant rehearings, and, while we do not desire to be understood as saying that the actions of the board of supervisors—acting *de facto* as a board of county commissioners, during the period from the rendition of the judgment in that case until the time of the denial of the motion for a rehearing—were absolutely void, we are of the opinion, under these circumstances, where bills purporting to have been allowed were not in conformity with the provisions of the statute, and which appear to have been allowed under an erroneous construction of its provisions and in a case where the rights of innocent purchasers or other third parties had not intervened and within a very short time after the former actions, and, while the matter was not yet completed, in that the statute provides the warrants shall be signed by the chairman and clerk, which had not been done, that it is not such a final action as would prevent the board of county commissioners *de jure,* after coming into their offices, from reconsidering the actions of the *de facto* board for the purposes, as stated in the resolution "in the interest of the taxpayer, of allowing an investigation by their attorney" in order to be properly advised so as to be able to pass intelligently upon the validity of these claims, and we have been furnished no authorities by

counsel holding otherwise in a case like the one at bar.

It must be remembered the board had only been given possession of their offices seven days preceding the date of this demand, and this, in the largest populated city and county of the state, where, of necessity, there must accrue a large amount of business from day to day to be disposed of. They had taken possession of these offices, not in the usual manner provided for county commissioners, one at a time, some member of past experience always being on the board, but all three at once, possibly without prior experience in handling the large finances of a county of this class. This action, upon the part of the board, did not defeat any rights of the defendant in error, and was not a refusal to pay any proper claim due him by the county; it was his privilege then, as it is now, to have presented to the regular board his bills properly itemized in compliance with the statute, and in case they were or are disallowed he has his right to appeal therefrom.

The case of the *State ex rel. Clark v. Buffalo County,* 6 Neb. 454, relied upon by counsel where it is contended the claim had been adjudicated by one board and for that reason could not be reviewed by their successors, is not in point. In that case both boards were *de jure* boards and, after the allowance of the claim by the first board (which was for the construction of a bridge), an injunction was sought to be obtained in the district court enjoining the commissioners from making payment of the claim, which action was taken to the supreme court, where it was held the claim was properly allowed as being within their jurisdiction. Thereafter, after the election of the new board and after this decision by the supreme court, the new board attempted, by resolution, to rescind the action of its predecessors, and it was held

by the supreme court of Nebraska it could not be done.

Neither do we think the dictum upon this subject in the case of *Garfield County v. Leonard,* 3 Col. App. 579, is authority for the position contended for by counsel; while in that case at page 580 we find Mr. Justice Reed. quoted with approval from the case of *Roberts v. People,* 9 Colo. 458, the following:

"The rule governing the allowance of claims by the board of county commissioners is that the authority must be found in the statute, either in express words or by fair implication. In other words, in order to bind the county, the county commissioners must act within the scope of their authority. Where a claim is clearly not a legitimate charge against the county, the county commissioners have no power to allow it, and its allowance would neither bind nor estop the county; as, for example, where the commissions of a collector of taxes are fixed by statute at a certain rate per cent. and the board allows him a greater rate."

In this case the law provides the amount to be paid shall be the actual expenditure necessary to have this work done, and the bills presented to the board of supervisors and allowed were at so much per folio, and so stated in the bills, regardless of the cost thereof, which, under the ruling in the *Roberts case,* justified the commissioners in their action in rescinding the allowance of these claims for the purpose of the investigation in order to ascertain the exact amount which should be paid; the amount of the allowance was not such a discretionary matter as would be binding, being one controlled purely by the statute. In some states it is held that if the auditor draws warrants for illegal claims he is personally liable.—*Walton v. McPhetridge,* 120 Cal. 440.

Neither do we think the case of *People v. Reed,*

11 Colo. 138, is applicable. In that case a vacancy
in the office of county treasurer was filled by the board
in the forenoon of January 10th, the term of one of
the members had expired at midnight, January 9th,
but, according to the pleadings his successor had not
qualified at the time of the meeting on the forenoon
of the 10th, and the commissioner whose term had
expired acted at the meeting on the forenoon of that
day and his vote gave a majority for the appointee.
The board adjourned from the meeting on the fore-
noon until the afternoon of the same day; at the
meeting held in the afternoon the successor of the
commissioner whose term had expired on the day
previous sat in the place of the outgoing commis-
sioner.   On the afternoon of the 10th, the new board
attempted to rescind the action of its predecessors on
the morning of the same day and elected another to
fill the vacancy in the office of the county treasurer,
but during the interim the first appointee had filed
his bond, which had been duly approved; had taken
the oath of office and was proceeding in the discharge
of his duties, and this court, upon the pleadings, held
the action of the old board was valid in as much as
the appointee had qualified and was performing the
duties of the office at the time the board pretended
to act in the afternoon, that no vacancy existed for
the commissioners to fill, and, hence, their resolution
attempting to rescind the proceedings of the morn-
ing session could not be held to have recreated the
vacancy.   This decision by Mr. Justice Helm was
rendered upon the pleadings.   Thereafter, in the
case of *People ex rel. Williams v. Reed,* 11 Colo. 141,
involving the same office, upon proof taken it was
shown that the newly elected county commissioner
had qualified by filing his official bond and taking
his oath of office prior to the 10th day of January,
and it was then held the successor of the old commis-

sioner whose term expired at midnight on January 9th, having qualified, the old member could not legally participate in the proceedings of the board on the following day, the 10th of January, and the acts of the board in so far as it depended upon his vote were without validity and therefor void, and gave judgment for the appointee of the new board.

There is also a line of authorities which hold, under certain circumstances and conditions, such boards can reconsider and rescind their former actions or that of their predecessors.—*Tucker v. Justice,* 13 Ired. 434; *Appel v. State ex rel.,* 9 Wyo. 187; *Hiram Higgins v. H. W. Curtis et al.,* 39 Kan. 283; *Hundley v. Board of Commissioners of Finney Co.,* 42 Pac. (Kan. App.) 59; 1 Dillon on Municipal Corporations (3d ed.), § 290.

Most of the objections as to the admission of illegal evidence are not liable to be raised again, and we have refrained from considering only such as might arise in another action over the principal contention, as to that portion of the evidence of the defendant in error, wherein he was allowed to give oral testimony as to what percentage the taxable property of Adams county bore to the taxable property of the city and county of Denver, in which he stated he got his figures from the board of appraisers appointed under the provisions of this law. A motion was made to strike out this evidence, which was overruled and exception taken. He was further allowed, over objections, to testify as to what this board of appraisers found and as to what they did; no member of this board of appraisers was called as a witness and no record evidence furnished as to their findings. We do not think this evidence was proper; it simply being statements as to what some one else told him. Certainly there was some record evidence of the action of this board of appraisers which could

have been presented by proper certificates; if not, the members of the board themselves should have been called or some reason presented why proper evidence could not have been furnished upon this subject. The defendant was allowed to give evidence as to what this board of appraisers did in the way of ascertaining the percentage of the taxable property in Adams county and the city and county of Denver; without any further showing, we think this was, for the same reasons, incompetent, and without which evidence it leaves the court without any proper showing as to what percentage of the claims, if lawful, should have been paid by the city and county of Denver. The same ruling should apply to the evidence of the defendant in error as to what the findings of the committee were, which he claims checked up the number of folios so transcribed by him.

For the reasons stated, the judgment is reversed and the cause remanded with instructions that the action be dismissed without prejudice to the rights of the defendant in error.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.