Cunningham, Presiding Judge.
In February, 1903, tbe City of Golden {hereinafter for convenience referred to as the City) entered into a contract with Ronald P. McDonald (to whom we shall hereafter refer as the contractor) whereby the contractor was to construct a system of water works for the City. By the terms of this contract McDonald was to receive in payment for his work and material $95,000, $50,000 of this amount to be paid in bonds issued by the city for the purposes of constructing the water works. The total bond issue was $100,000, $50,000 of said bonds being sold for cash, at par, to create a special fund for the construction of the said water works. The contractor’s conduct or work being unsatisfactory, the city elected to and did terminate its contract with him in January, 1904, before the work called for by the contract had been completed, but after a very considerable amount of it had been done. The $50,000 worth of city bonds which the contractor was to receive were issued and delivered to him long prior to the termination of the contract. He was also allowed and paid by the city something over $2,500 on November 4, 1903, and on December 1st of the same year he was allowed and paid something over $1,400. These payments were made to the contractor on estimates and favorable reports upon his work, or upon his bills by the finance committee of the city council, and while McDonald was. still prosecuting his work under the contract. The contractor became indebted to the Lumber Company for material which it had furnished him, and which he and another firm of contractors, who *464 completed the water works after the termination of- the McDonald contract, used in the construction of the plant. For this indebtedness, amounting to over $3,000, after all proper credits were allowed, the contractor gave an order to the plaintiff in error on the city. In fact he gave two such orders, one signed by himself, and one signed by himself and his manager. These orders appear to have been delivered to the city clerk, and probably a copy of them to the mayor, although the mayor testified that he had no recollection that he received a copy of either of the orders, while the manager of the plaintiff in error (hereinafter referred to as the Lumber Company) testified unequivocally that lie did deliver or mail to the mayor a copy of such orders, or at least one of them, and knew that the mayor received the same, for he saw and talked with that official concerning the matter, and that the mayor destroyed one of the orders in his presence. There was other evidence, such as correspondence, •clearly indicating knowledge on the part of the city officials that the contractor was not making satisfactory settlements with the Lumber Company for material which the latter was furnishing the former. Failing to secure payment of the balance due it, the Lumber Company filed its bill in the district court on May 27, 1904, against the contractor and the city. The contractor, although properly served, made default. The trial court found generally for the city and dismissed the action as to it. No special findings were made by the trial court. The case was tried without a jury.
From the foregoing it will be seen that the liability or non-liability of the City to the Lumber Company is the sole question presented for our consideration.
The Lumber Company predicates its right of recovery on the Mechanics ’ Lien act of 1899, chapter 118, page 261 (section 4025 eb seqB. S. 1908); also upon chapter *465 124, Laws 1899, page 310 (section 5406 et seq., E. S. 1908), and upon other grounds, which, in the view we take of the case, may be disregarded.
1. There can be no question that the water plant which the Lumber Company seeks to reach by lien is owned by a municipal corporation and used for public purposes. Counsel for the Lumber Company concedes that the great weight of authority is against their contention that property owned by a municipal corporation and used for public purposes can be subjected to a mechanic’s lien./ Boisot, in his work on Mechanics’ Liens, section-208, thus announces the rule:
“There can be no mechanic’s lien on public property unless the statute creating such lien expressly so provides, since such a lien would, be contrary to public policy, and would also be incapable of enforcement, public property not being subject to forced sale.” — 27 Cye., 25. ■
To the same effect is Dillon on Municipal Corporations, voh 2 (4th Ed.), section 572, and Phillips on Mechanics’ Liens (3rd Ed.), section 179. Our Mechanic’s Lien Act, section 4025, E. S. 1908, does not expressly provide for subjecting such property to a lien. On the contrary, the same session of the legislature which passed that act passed another bill also, which we shall presently discuss, designed to protect the rights of all those having claims for labor performed upon or material furnished for public works. By thus attempting to provide a distinct remedy limited exclusively to those performing labor or furnishing material upon or for public works, the legislature indicated clearly that the general Mechanic’s Lien Act which it had just passed was not designed to give a lien upon public property. Our respect for the conceded weight of authority, and the clearly manifested purpose and intent, of the legislative department of our *466 state government, impels us to hold that the. provisions of chapter 118 of the Laws of 1899 (known as the Mechanic’s Lien Act) may not be invoked by one who performs labor or furnishes material upon or for public works, for the purpose of fastening a lien upon public property.
2. Let us next examine chapter 124, Laws 1899. Our attention has not been called to any similar enactment in other states, nor does it appear that the provisions of our act have been previously before the courts of this state for consideration.
On behalf of the city it is urged that the act is defective, incomplete and ineffectual, in that it provides no penalty for failure on the part of the public officials referred to in the act to comply with its requirements: For this reason we are asked to declare the statute a dead letter, an act without life or vitality. A proper interpretation of any legislative act imposes a grave responsibility upon the court to whose lot such duty may fall, particularly so when the very life of a statute depends upon the conclusion reached. Eealizing the importance of the contentions submitted, we have spared no pains in our examination of the authorities cited, and others to which our research has led; nor shall we permit considerations of brevity to limit the expression of our views.
A familiar rule of statutory construction requires that courts should strive to ascertain and give effect to the intent of the legislature.—Dekelt v. People, 44 Colo., 525, 99 Pac., 330; County Commissioners v. Lunney, 46 Colo., 403, 104 Pac., 495.
In the latter case Mr. Justice Hill has collected a large number of authorities bearing upon this question, and announces that:
‘ ‘ The intention of the statute is the law. ” It is com *467 petent for the legislature to enact rules for the construction of statutes. — 36 Cyc., 1105.
And our legislature has exercised this authority.
Section 6299, E. S., reads as follows:
“All general provisions, terms, phrases and expressions used in any statute shall he liberally construed, in order that the true intent and meaning of the general assembly may be fully carried out.”
This statute has been in force since 1861. While the title of an act may not govern, it may be looked to by the courts when seeking the legislative intent. — 36 Cyc., 1132.
In Hanly v. Sims, 94 N. E., 401, the supreme court of Indiana, speaking of the preamble of a legislative act, uses this language:
“The preamble of the act in question may be said to contain the finding of facts by the legislature which led up to the passage of the act in controversy.”
In Fenner v. Luzerne County, 167 Penn., 632, 31 Atl., 862, it is said:
“A preamble is said to be the key of the statute, to open the minds of the makers as to the mischiefs which are to be remedied and the objects which are to be accomplished by the provisions of the statute.”
The title of the act here under consideration reads as follows:
“An Act to secure the payment of claims of laborers, sub-contractors, and others performing labor and furnishing materials upon public works constructed under the authority of cities, incorporated towns and school districts.”
It is manifest from the title of the bill that its purpose was to secure the payment of claims for which the city was not theretofore, under pre-existing laws, liable. *468 Abridged as much as possible for our purpose, the statute in question reads as follows (we shall adopt the section numbering in the Revised Statutes and Morrison & De ■ Soto’s Annotated Statutes):
“Sec. 5406. That hereafter it shall be'the duty of councils of cities * * * which have contracted for the construction of public works, to withhold payment of moneys due the contractor for the construction of such public works to satisfy the claim of laborers, sub-contractors,” etc.
“Sec. 5407. Before any payment shall be made to the contractor as may be provided for in the contract for the construction of such public works, the contractor shall present to the council of cities * * * a statement in writing showing the amount owing by him for labor performed or material furnished and the names of the persons to whom such sums are due. # * *
“It shall be the duty of the clerks of cities * * * to cause to be published * * * a notice in substance that at a designated meeting of the city council * . * * to be held not less than ten days from the time of the first publication of such notice, payment will be made to the contractor and that the claimant to. whom sums are owing for labor or material may file with the clerk of cities * * * on or before the day of such meeting.
“Sec. 5408. Any person to whom a contractor * * * may be indebted may file with the clerk of such city ■ # * * a claim * * * . If such claim tally with the statement of the contractor * 7 * the amount claimed shall be paid directly to the claimant, and shall be deducted out of the sum to be paid contractor * * * . In case claim filed shall not be admitted or tally with statement filed by contractor * * * as aforesaid, such claimant shall within thirty days bring suit in some court of competent jurisdiction to recover *469 judgment against the contractor * * * and on filing a transcript, showing final judgment has been recovered, together with a certificate of the clerk of the court that the same has not been appealed from, shall be entitled to be paid the same as if claims had been admitted as aforesaid. * * * ” (The italics are ours.)
It is conceded that the city made no attempt whatever to comply with the provisions of this statute or any thereof. It is true that nowhere in the letter of the act is the laborer or materialman given a specific lien on the funds in the hands of the city designed to pay. for the improvement created, in part at least, by the contributions of such claimant, nor is there any penalty specifically provided for failure to do the things imposed by the statute, upon the public officials. Neither does the statute, in specific terms, by its letter confer a right upon anyone, by reason of the failure or omission of the public officials in this behalf. But where no express penalty is prescribed in a statute, it does not necessarily follow that no right is conferred by it upon those who may suffer by reason of its violation. A statute must be so construed and applied as to fully carry out the true intent and meaning thereof, and as we have already pointed out, our supreme court has expressly ruled in County Commissioners v. Lunney, supra, that: “The intention of the statute is the law. ’ ’
The statute in unmistakable language makes it the duty of the board to withhold the fund in question until its provisions shall have been complied with. For whom does it act in so withholding the fund? Not for the contractor; his interests are not.thereby advanced. On the contrary, they are interfered with. There can be but one answer to the question: ■ By the statute the city is made the agent or trustee for the unpaid claimant, and the fund in the hands of the city is impressed with a *470 trust in Ms favor. By section 5406, in the most unequivocal language, the trustee created by the statute, namely, the city in this case, is enjoined to withhold the payment of money due the contractor, and the purpose for which it is to be withheld is clearly expressed: “To satisfy the claim of laborers,” etc. Section 5407, in language requiring no interpretation, positively forbids payment by the city to the contractor until he shall have done the things imposed upon him by the statute, and this no matter what the terms of the contract between the city and the contractor may be. It is a familiar rule that the law of the place where the contract is entered into at the time of the making of the same is as much a part of the contract as though it were expressed therein.—9 Cyc., 592; Chicago Lmbr. Co. v. Newcomb, 19 Colo. App., 274-5.
But the legislative act in question, in terms, requires that any contract for public work, such as that which was to be constructed in this case, should be subordinated to the provisions of the statute, to the end that laborers and materialmen might be given an opportunity to protect themselves against dishonest or insolvent contractors to whom they had extended credit. Section 5408 of the act, in unequivocal terms, commands the city to pay the money due the claimant directly to him, when by agreement or judgment that amount shall have been ascertained. Thus, and thus only, may the city, whom the statute has made a trustee, dispose of the trust fund and discharge its duty under the trust imposed by law. The imposition upon the city to pay, by implication creates a.right in the claimant to compel payment by proper legal action.—Hammond v. School Board, 109 Mich., 676.
Though a law is imperfect in its details, it is not void unless it is so imperfect as to render it impossible to execute; but the imperfections of its details may be sup *471 plied by the rules of court.—Lessee of Cochran’s Heirs v. Loring, 17 Ohio, 409.
In Bloomer v. Bloomer, 128 Wis., 297, the following language is used:
“The further point is made that the law is fatally defective because the legislature omitted providing details for carrying it out. * * * The law itself, by necessary implication, provides for its execution. * * * It is absolutely free from ambiguity. The imposition of the duty necessarily carries with it the right and the duty to incur the necessary expenses, and in the only way practicable: by means of action by the executive department of the town and the village. The right and duty to incur the expense, again, carries with it by necessary implication the duty of the people of the town to make the necessary áppropriation and provide by vote for levying the necessary tax to meet the expenditure. Upon their failure to do so a suit upon implied promise * * * is the proper method of vindicating the right of the matter. * * * It is a mistake to suppose that a law imposing npon a municipality the duty to do a particular thing requiring public expenditure is necessarily void because it does not provide in detail procedure to be followed. * * * If the courts were to exercise power to modify all legislation not providing expressly for all administrative features it would not take long to create confusion of a very prejudicial character.”
In Illinois Central R. R. Co. v. Wells, 104 Tenn., 706, 59 S. W., 1041, the supreme court of Tennessee had before it a lien act which had been challenged upon similar, if not the identical grounds urged by the' city in the instant case, and in the course of its opinion that court used the following language, which meets with our approval :
*472 “It is true, as suggested, that the present act does not prescribe any method for the enforcement of the lien declared; yet that omission does not render the act unconstitutional, since there is no provision in the organic law requiring that acts granting new rights shall likewise provide new remedies. The statute would undoubtedly have been more complete within itself, and more simple in its application, if that omission had been supplied. Nevertheless it was manifestly within the legislative power to declare the lien, without more, and leave the enforcement of it to the general law in reference to liens as was in fact done. ’ ’
The legislature in the act before us had the right to impose the trust upon the particular fund, and leave the enforcement of the trust to the general law in reference thereto, as it appears to have done. Equity recognizes and protects certain rights ignored at law. The most important of these is the right of one in whose favor a use or a trust has been created.
“One who is equitably entitled to funds, the holder of which is legally obliged to pay to another, may maintain a bill against the debtor and legal creditor to establish a right and recover.” — 16 Cyc., 88-90.
In the instant case by the statute, which, as we have seen, must be regarded as having been written into the contract between the city and McDonald, the city was legally obligated to pay the claim of the Lumber Company directly to it, and by implication, was forbidden to pay it to McDonald, the contractor (providing, of course, the Lumber Company established its claim in the manner provided by the act).
As was said in In re McKennan’s Estate, 27 S. D., 132; 130 N. W., 33-43: “The statutory liability to pay is just as strong in binding force and effect as if it were contractual. ’ ’
*473 In the case under consideration, the record discloses that the contract between the city and the contractor contained the following provision:
“The contractor shall give the engineer satisfactory evidence by the production of receipts, letters and in other ways, that all persons who have done work or furnished material in the execution of this contract have been fully paid or satisfied. If the contractor shall fail to pay and discharge all such claims, the City of Golden shall have the right to pay the same, and charge the contractor the amount so paid, and deduct the same from any money due or which may become due to the contractor by the city.”
It will be observed that the contract but declares the rights which the city possessed under the statute, the principal difference being that the statute, along with the right which it conferred upon the city to require evidence that the contractor had settled with his creditors, also imposed a duty upon the city. By the" terms of its contract and the provisions of the statute, the city, in effect, invited parties to deal with McDonald and extend credit to himuon the faith of that contract. Equity will not, under such circumstances, allow the city to say, when it is sued, that because it has seen fit to pay McDonald in violation of the statute it will repudiate the duty which, under that statute, it owed to those who had, on the faith of the contract between the city and McDonald, as supplemented by the statute, extended to the latter credit. — Bispham’s Principles of Equity, section 294.
Statutes like the one under consideration are designed to shield, not to ensnare, laborers and material-men, and it is the business of courts to see that their beneficent purpose is effectuated. Even in the absence of a specific statutory lien, equity and good conscience require the city to perform the imperative duty, imposed *474 upon it by the statute, of withholding what was due the contractor until those who had supplied him with material for the construction of the city’s water system could avail themselves of the provisions of the statute, and equity regards and treats that as done which in equity and good conscience should be done. This is an ancient maxim, so universally recognized by all the authorities on equity that it is not necessary for us to do more than give citations where the subject is discussed. —Bispham’s Principles of Equity (7th Ed.), sec. 44; Pomeroy’s Equity Jurisprudence (2nd Ed.), vol. 1, sec. 364; 16 Cyc., 135.
Speaking of this maxim, Professor Pomeroy (sec. 364) says:
“It has been applied by the most eminent courts to all classes of .equities; to every instance where an equitable ought with respect to the subject-matter rests upon one person towards another; to every kind of case where an affirmative equitable duty to do some positive act devolves upon one party, and a corresponding equitable right is held by another party. ’ ’
And again, section 365:
“In the first place, it should be observed that the principle involves the notion of an equitable obligation existing from some cause; of a present relation of equitable right and duty subsisting between two parties, — a right held by one party, from whatever cause arising, that the other should do some act (and, of course, where the'obligation requires that one should refrain from doing some act, the principle is equally applicable) and the corresponding duty, the ought, resting upon the latter to do such act.” ' •
Professor Pomeroy thus concludes (sec. 377) his lengthy discussion of this important maxim or rule of equity:'
*475 “It is no exaggeration, therefore, to say that the principle lies at the very foundation of the department of equity jurisprudence which deals with equitable estates, property, and interests analogous to property.”
And he declares that:
“Every species of purely equitable property, and of equitable interests analogous to property, except those which are intentionally created by the direct and affirmative operation of some instrument similar in its action to a conveyance at law,' is a certain and necessary result of the principle, that equity treats that as done which in good conscience ought to be done.”
This wholesome rule of equity requires us to hold that neither the city’s duty nor the Lumber Company’s right have been in any manner altered by the unauthorized payment by the city of McDonald’s claim, and that" the Lumber Company may yet look to the city for its pay for the material furnished the contractor, precisely as it might have done had no such payment been made by the city to him. By its answer the city admits that it took a bond from McDonald in the sum of $25,000 for the faithful performance and fulfillment of the contract entered into between itself and him. The record further discloses that the city was protected against double payment for McDonald’s work (a) by its contract with him; (b) by the statute. If it has waived its rights to look to the bond or to enforce its contract, the court may not relieve the city by transferring the results of its folly to the shoulders of those who, relying on the statute, credited McDonald for material used in the construction of the city’s water plant.
Entertaining no doubt as to the validity of the statute and the right of the Lumber Company to invoke its provisions, the judgment of the trial court must be re *476 versed and the case remanded for further proceedings in harmony with the views herein expressed.
Other questions than those herein determined were ably presented in brief' and on oral argument, but in view of the rights conferred and obligations imposed by the statute upon the parties to this action, it is not necessary to further prolong this opinion by a discussion of other questions.

Reversed and Remanded.