**WESTINGHOUSE CREDIT CORPORATION, Appellant,**

v.

**James. GREEN and Emma Jo Green, Appellees.**

No. 8784.

United States Court of Appeals
Tenth Circuit.

Oct. 26, 1967.

Richard M. Davis, of Davis, Graham & Stubbs, Denver, Colo. (Robert H. Harry, Thomas S. Nichols and Richard P. Holme, of Davis, Graham & Stubbs, Denver, Colo., with him on the brief), for appellant.

Bernard L. Trott, of Trott, Kunstle, O'Leary & Ratner, Colorado Springs, Colo., for appellees.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal by Westinghouse Credit Corporation from a jury verdict in favor of Mr. and Mrs. James Green, who, with others, had signed as guarantors on a loan made by Westinghouse to Mountain States Mining and Milling Company. The Greens' defense was that their guaranty had been induced by the fraudulent representations of Westinghouse agents having apparent authority to make such representations. Westinghouse denied the agents' apparent authority and counterclaimed that Green had defrauded it by withdrawing from Mountain States money he had advanced to the company to qualify it for the Westinghouse loan. Green denied that his actions were fraudulent.

Green had been approached by Donald Coleman, the owner of Coleman Electric Company and an independent finance dealer for Westinghouse, and by H. K. Gilliland, the president of Mountain States Mining and Milling Company. Coleman had been in touch with the industrial financing agent of Westinghouse, who had recommended to Westinghouse that it make a loan to the new company. Westinghouse agreed to loan $165,000.00 to the newly formed corporation, provided that certain paid-in capital requirements were met. Coleman

proposed that Green advance the company $85,000.00 interim financing in return for a royalty interest and an interest in the process to be used to recover gold from the Snake River in Wyoming. Of the $85,000.00 interim money, $65,000.00 would be paid to Coleman Electric Company for equipment it furnished to the project, and Coleman proposed to borrow this amount from his company and turn it back to Green immediately. The effect of the proposed transaction would be that the mining company would have an equity ownership in the equipment, and Coleman would owe his company the amount of the repayment to Green. The gold mining claims owned by the company and the new process to be used to recover the gold were represented as very valuable.

A series of meetings were held. At one of them, Paul Lord, a Westinghouse salesman, gave Green a report on the project. The report was bound in a Westinghouse cover, and Coleman and Lord represented that it was the result of an investigation by Westinghouse into the recovery process and the value of the claims. The report was very favorable to the proposed venture's profitability. Both Coleman and Lord owned stock in the venture.

Coleman and Gilliland also asked the Greens to become substituted guarantors on the Westinghouse loan, replacing two guarantors who had refused to put up any money for the project. The Greens agreed to advance the $85,000.00 and to guaranty the note. In accordance with Coleman's initial proposal, $65,000.00 was paid to Coleman Electric Company, and it returned this amount to Green.

The mining company soon became defunct, and it appeared that the mine had been "salted" so as to falsify the reports of its value. The new recovery process was equally valueless. Westinghouse had never investigated either the property or the process, and the representations that it had done so were completely false.

With the loan in default, Westinghouse sought to hold the guarantors liable and filed this diversity action in the court below.

At the close of the evidence, Westinghouse moved for a directed verdict in its favor on its charge of fraud against Green and for a directed verdict against defendants on the issue of apparent authority. The court denied the motions, and this is appealed as error. Westinghouse contends that the evidence fails to show any acts or conduct by it which created apparent authority in Coleman or Lord to make representations to the Greens. Further, it argues, no representations of any kind were made to Mrs. Green, so that the issue of whether she was fraudulently induced to sign as guarantor should not have gone to the jury.

■■ Apparent authority is created in an agent when the principal, by written or spoken words or any other conduct, causes third parties to reasonably believe that the principal consents to have the act done or the words spoken on his behalf by the person purporting to act for him. Brownell v. Tide Water Associated Oil Co., 121 F.2d 239 (1st Cir. 1941) ; Restatement (Second), Agency §§ 8, 27 (1958). Both Coleman and Lord were connected with Westinghouse. Lord was a direct employee, and Coleman was a finance dealer for Westinghouse and identified as such throughout the transaction. He handled the loan transaction from application through commitment, including the signing of the guaranties. He either obtained the necessary forms from Westinghouse in connection with this transaction or already had them on hand. A copy of the specious report was exhibited to Green at Coleman's office. Green and Lord then went to Lord's private office in the Denver suite of Westinghouse where a copy of the report was put together, bound in a Westinghouse cover, and given to Green. The fraudulent representations appeared to Green to have been made within the agents' authority. These representations were made at the meetings attended by Mrs. Green, and she, too, read the report.

The Westinghouse requirement that the company show a certain paid-in capital before it received a loan was fully testified to, but so was Green's arrangement to immediately receive back his advance.

 The evidence and the inferences to be drawn from it were such, when viewed in the light most favorable to defendants, that reasonable men could reach different conclusions, making it proper to deny the motions for a directed verdict on the issues of fraud and apparent authority. Western Transmission Corp. v. Colorado Mainline, Inc., 376 F.2d 470 (10th Cir. 1967); Christopherson v. Humphrey, 366 F.2d 323 (10th Cir. 1966).

Westinghouse's subsequent motion for a judgment n. o. v. failed for the same reason. The case was submitted to the jury, and it found that the agents had apparent authority to make the fraudulent statements. The jury properly observed the witnesses who testified, appraised their credibility, determined the weight to be given to their testimony, drew inferences from the facts established, resolved conflicts in the evidence, and reached ultimate conclusions of fact. Employers Liability Assurance Corp. v. Freeman, 229 F.2d 547 (10th Cir. 1955); Loew's Inc. v. Cinema Amusements, Inc., 210 F.2d 86 (10th Cir. 1954). The appellate court must take that view of the evidence most favorable to the prevailing party and, if there is substantial evidence to support it, uphold the verdict. Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961); Loew's, Inc. v. Cinema Amusements, Inc., supra.

Westinghouse argues that the trial court erred in refusing certain jury instructions requested by it. This contention can be handled with dispatch. The record reflects no objection in accordance with the requirements of Rule 51, Fed.R.Civ.P. The failure to object to the trial court's refusal to give the requested instructions bars an appeal on this issue. Great-West Life Assurance Co. v. Levy, 382 F.2d 357 (10th Cir. 1967); Jackson v. Nelson, 382 F.2d 1016 (10th Cir. 1967); Western Transmission Corp. v. Colorado Mainline, Inc., supra; Dunn v. St. Louis-San Francisco Railway Co., 370 F.2d 681 (10th Cir. 1966).

The judgment is affirmed.