Darrow L. STEMPLE, Plaintiff-Appellee,

v.

PHILLIPS PETROLEUM COMPANY, Defendant-Appellant.

Darrow L. STEMPLE, Plaintiff-Cross-Appellant,

v.

PHILLIPS PETROLEUM COMPANY, Defendant-Cross-Appellee.

Nos. 359–69, 360–69.

United States Court of Appeals, Tenth Circuit.

July 20, 1970.

Rehearing Denied in No. 359–69 Sept. 23, 1970.

John S. Pfeiffer, Denver, Colo. (Frederic L. Kirgis and John J. Mullins, Jr., of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., were with him on the brief) for Phillips Petroleum Co.

William K. Ris, Denver, Colo. (Thomas D. Smart and James M. Roberts of

Thomas D. Smart, Wood, Ris & Hames, Denver, Colo., were with him on the brief) for Darrow L. Stemple.

Before LEWIS, Chief Judge, and HILL and SETH, Circuit Judges.

LEWIS, Chief Judge.

These cases present an appeal and cross-appeal taken by the parties from a judgment entered by the United States District Court for the District of Colorado on a jury verdict in the amount of $237,600 in favor of Stemple, plaintiff below, and against Phillips Petroleum Company (Phillips). The judgment represents damages for personal injuries suffered by Stemple in a fire that occurred on July 9, 1967, in a Phillips-owned service station located at Rawlins, Wyoming. Although the appeal of Phillips sets out multiple claims of trial error, the primary appellate question probes whether, under Wyoming law, any basic potential for liability exists on the part of Phillips for the results of the tragic fire.

At the time Stemple was burned he was 17 years old and working as an attendant for the operator of a "66" service station subleased from the lessee of Phillips. Phillips had purchased the station in 1963. It contained a gas-fired heater located in an alcove off the grease bay; the opening connecting the two rooms was seven feet high and six feet wide. The legs of the heater rested on a concrete floor with the pilot flame at approximately nine inches above floor level. On the night of the accident, after having filled the 14-gallon gas tank of a customer's automobile, Stemple was guiding the car onto the hoist in the lubrication room when the tank ruptured while over the hoist and spilled out over the floor. Stemple stood near the alcove

in or near the spreading gasoline as it ignited and severely burned him. According to witness testimony, from the time the spillage was visible to him, Stemple had tried to use the sump gun, equipment for removing the gas, and then put it away.

Both parties' experts agreed that the fire was probably caused by the contact between the hot water heater flame, which stood approximately 12 feet from the hoist, and the vapor from the released gasoline. The causative theory was that the hot water heater proved to be the lowest source of ignition down to which the heavier gasoline vapors flowed. Although there was some equivocation on point, the experts also stated that elevation of the heater would have reduced the possibility of fire, and Stemple's experts concluded that a height of 18 inches would have rendered the fire possible, but improbable. In that regard plaintiff introduced standards promulgated by the National Fire Protection Association and adopted by the Wyoming Fire Marshal prior to July 7, pursuant to Wyo.Stat.Ann. § 35–421(4) (1957) as amended, recommending an 18-inch height for heating equipment installed in service station areas where no gasoline is dispensed. Stipulated evidence was presented that one McKelvey, Phillips' District Representative in the area, was charged with inspecting stations for unusual fire hazards.

Against this general factual background of the cause and result of the fire, the trial court instructed in part that Phillips could be found liable if it retained "a general supervision over the premises for a limited purpose, such as the making of repairs or maintenance * * *."[1] Citing the provisions of both

---

[1]. The court isolated the following factors to be considered in determining whether Phillips exercised control:

Now, exclusive control is not required. In determining whether a lessor had a sufficient degree of control of the premises and fixtures to render it liable for harms resulting therefrom, you are to

consider the total circumstances of the situation. Now, factors which are to be considered are who controls access to the premises, the right of the lessor in its discretion to enter and inspect the premises, the right of the lessor at its own discretion to make repairs or alterations to the premises or to have such

the leases between Phillips and the lessee Kaspar and running from Kaspar to Wilcox, as the sublessee operator,[2] Phillips has argued that the lease agree-

repairs or alterations made, an obligation of the lessor to maintain or repair the premises and fixtures, the actual making of repairs or of doing maintenance to the premises or having them done.

Now, the existence of no single one of these factors can dictate a conclusion that the lessor has sufficient control. You are instructed that the mere right to enter and inspect without a right to repair is insufficient, nor is the mere obligation to repair the premises sufficient. What is required to hold a lessor responsible is the retention by it of a general supervision over the premises for a limited purpose, such as the making of repairs and maintenance, the right to enter the premises and make repairs upon its own initiative and responsibility, and the making of such repairs or performing such maintenance.

2. The lease from Phillips to Kaspar included the provisions listed:

7. At the expiration or termination of this lease, whether by lapse of time or otherwise, Lessee shall without notice surrender to Lessor possession of the leased premises and shall return to Lessor all buildings, fixtures, tanks, and other equipment herein leased in as good condition as when received by Lessee, excepting acts of God, fire and only reasonable wear and tear incident to the proper use thereof. If Lessee shall for any reason be unable to return to Lessor said buildings, fixtures, and equipment, or any item thereof, Lessee shall replace the same with similar property of like value or shall pay to Lessor the market value thereof. It is understood and agreed that Lessee accepts the leased premises, property, buildings, fixtures and equipment hereinabove described in their present state without any warranty, express or implied; that Lessor does not, either expressly or impliedly, warrant or guarantee the materials, workmanship or completeness of said premises and property or their fitness or condition for any purpose. The obligations of the parties with respect to repairs or replacements necessitated by reasonable wear and tear shall be as follows:

A. Lessee shall at his sole cost and expense make necessary repairs to the leased buildings and equipment described in paragraph 1A and equipment described in paragraph 1B where the cost of such repairs is fifteen dollars ($15.00) or less. When necessary equipment repairs or replacements are in excess of fifteen dollars ($15.00), Lessor will furnish, at its option, new or used replacement equipment or repair parts f. o. b. the leased premises in case of property described in paragraph 1A and f. o. b. Lessee's warehouse at Rawlins, Wyoming in case of equipment described in paragraph 1B. Lessee shall at his sole cost and expense make proper installation of replacement equipment or repair parts furnished by Lessor, provided that Lessor will reimburse Lessee for such installation expense at any of the locations described in paragraph 1A above in excess of fifteen dollars ($15.00). Unless otherwise authorized in writing by the Lessor, the Lessee hereby agrees to immediately return any replaced equipment, parts or material to the division warehouse point of Lessor * * *

B. Major building repairs when determined by Lessor to be necessary, will be made by Lessor. The right of Lessor to go upon the leased premises for the performance of its obligations hereunder is expressly reserved to Lessor.

C. Lessee indemnifies and agrees to hold Lessor harmless for any loss, cost or expense resulting from the obligation of the Lessee to repair or to install or replace equipment or parts furnished by Lessor under the terms hereof.

* * * * *

10. This lease shall be not be assigned in whole or in part and said premises and property herein described shall not be sublet and no rights or privileges as herein granted to Lessee shall be sold, transferred or assigned without first obtaining the written consent of Lessor and any such sale, transfer or assignment, whether voluntary or involuntary, shall be void and shall terminate the lease at the option of the Lessor.

* * * * *

14. The provisions of this lease shall not be construed as reserving to Lessor any right to exercise any control over the business or operations of the Lessee conducted upon the leased premises or to direct in any respect the manner in which any such business or operations shall be conducted, it being understood and agreed that as long as this lease is in full force and effect the entire

ments negative any relationship charging the company with a duty of control of the premises and that, apart from the leases, the evidence failed to support the imposition of such a duty.

■ The entire Wyoming case law on a lessor's liability for damage or injury occurring on premises over which he has specifically disclaimed control is found in Hefferin v. Scott Realty Co., 71 Wyo. 114, 254 P.2d 194, Annot., 78 A.L.R.2d 1241, 1243–45. The case does no more, or less, then hold a duty to repair defective leased premises does not devolve upon the landlord when the lease is silent on covenants to repair and warranting the condition of the leased premises, even if the lessor has gratuitously promised to repair the defect and in fact has attempted to do so. In contrast, the predicate of Phillips' liability was the control it exercised in practice over the subleased premises—as distinguished from the day-to-day business operation —despite the contrary recitations in the documents of lease.

■■ We conclude that the court's instruction did no violence to the principles announced in *Hefferin.* Moreover, Stemple's evidence supporting liability was sufficient to uphold the verdict against Phillips. *See* Westinghouse Credit Corp. v. Green, 10 Cir., 384 F.2d 298, 301. The company knew of the condition of the premises when leased, had control over subletting, reserved in the several leases the right to enter the premises and to approve and make all repairs over the amount of $15.00, and did effect 11 major repairs during the period of ownership preceding the accident. Although Phillips was alerted to the need for all but one of the repairs by its sublessee, Stemple did show that

Phillips was ultimately responsible for the maintenance of the premises, including equipment.[3]

■■ Phillips has also urged properly noted objections to the court's instruction on standard of care, failure to give the proffered instruction on assumption of risk, and admission of evidence on subsequent precautions taken. According to Phillips, the standard of the National Fire Protection Association recommending an 18-inch elevation for hot water heater flames did not apply to existing installations unless "a distinct hazard to life or adjoining property" was posed, a situation arguably not present in the instant case. The court's instruction embracing the NFPA standard did not include this retroactivity limitation. The court advised the jury that the standard was to be considered with all the other evidence in the case, which included a series of stipulations covering the type of heater, height of flame, location of the heater in the room adjacent to the lift, and dimensions of the opening between the two rooms; expert testimony; the presence of gas in the area under normal operations; and District Representative McKelvey's knowledge of the presence of gas in the area. However, what is important in view of Phillips' objection is that no instruction was given that deviation from the standard was negligence per se. Moreover, the record is unclear whether the retroactivity provision appearing in an appendix to the NFPA standards was adopted in Wyoming. We conclude that in these circumstances the instruction was permissible. The evidence that Phillips required its District Representative to make periodic inspections was not prejudicial and irrelevant under Chicago B. & Q. R. R. v. Lampman, 18 Wyo. 106, 104 P. 533. The

control and direction of such activities shall be and remain with Lessee.

Almost identical provisions to nos. 7, 10, and 14, quoted supra, were included in the lease between Kaspar and Wilcox.

3. Phillips has claimed that by lease the company solely obligated itself to "repairs or replacements necessitated by rea-

sonable wear and tear." See note 2 *supra.* An obligation to repair a defective condition, according to Phillips, would go beyond both the language of the lease and the type of repairs previously furnished. That Phillips' duty of care rises only to the affirmative obligations imposed by the lease ignores the realities of the parties' relationship.

type of inspection required by Phillips and the recommendations in the NFPA standards coincide in effect; therefore, the evidence was merely cumulative.

▮▮ Phillips next has argued that the court erred in ruling as a matter of law that the defense of assumption of risk was not available to appellant and, alternatively, in failing to submit the matter to the jury. Given the absence of facts that Stemple was aware of the danger inherent in the gas water heater, Phillips' contention must fall. The court proceeded to instruct the jury on contributory negligence, including elements of assumption of risk, which, we have held, is tantamount to the assumption of risk defense under Wyoming law. Askin v. Dalgarno, 10 Cir., 293 F.2d 424, 426 & n. 5.[4]

▮ After overruling Phillips' objection, the court allowed Stemple to show that after the fire Phillips had built five stations in the Rawlins area, each equipped with hot water heaters elevated six feet above floor level. Phillips challenges the evidence under the well-recognized rule that subsequent precautions to prevent recurrence of an injury are inadmissible to demonstrate negligence. Columbia & Puget Sound R.R. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405. Stemple counters with the equally basic exceptions that the evidence was presented to rebut Phillips' testimony that elevation of the flame would not have prevented the fire, that it was possible and practicable to have avoided the accident, and that the evidence proved Phillips' recognition of the NFPA standard. Stemple's first two arguments are inapposite because the testimony was presented in Stemple's case in chief and the subsequent repairs did not pertain to operation of the subject station. However, we cannot say

that adoption of a six-foot elevation is so inconsistent with recognition of the NFPA 18-inch standard as to constitute reversible error.

Finally, we summarily dispose of Phillips' remaining assignments of error going to the evidence supporting causation and amount of damages. The former was a jury question upon which the evidence furnished a sustainable basis. *See* Union Pacific R.R. v. Lumbert, 10 Cir., 401 F.2d 699, 700 & nn. 2–3 (Wyoming law). The question of damages was similarly a jury matter, with probable incapacitation and loss of future earnings documented, and we decline to upset this type of determination. *E.g.,* Kinsella v. Leonard, 10 Cir., 415 F.2d 574, 577–578.

In his cross-appeal Stemple contends that the trial court should have allowed interest on the recovery from the date of the filing of the complaint as provided by Colorado law, rather than limiting the accrual of interest to the date of the entry of judgment as dictated by Wyoming law. Stemple is a resident of Wyoming and the accident occurred in that state. Phillips is a Delaware corporation doing business in Colorado but whose principal place of business is Oklahoma.

▮ In a diversity action an issue such as here presented must be resolved by application of the conflict of laws rule of Colorado, the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. When no clearly discernible and clearly applicable conflicts rule has been announced by the forum state, the rule must be hypothesized to correspond with all available indices of what that rule would be if presently formulated by the Colorado courts. Criqui v. Blaw-Knox Corp., 10 Cir., 318 F.2d 811.

---

4. McKee v. Pacific Power & Light Co., 417 P.2d 426 (Wyo.), is distinguishable. A lineman-electrician with 28 years' experience was barred as a matter of law in this action against the power company for injuries sustained when a tie wire supporting a television cable attached to defendant's pole broke and contacted the company's high voltage lines. Unlike Stemple, by his own testimony McKee was fully aware of the sources of all dangers, not only the kind of danger that could be reasonably expected.

The Colorado statute in question provides:

In all actions brought to recover damages for personal injuries sustained by any person, resulting from or occasioned by the tort of any other person, corporation, association or partnership, whether by negligence * * * of such other * * * corporation * * * it shall be lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; and, when such interest is so claimed it shall be the duty of the court, in entering judgment for the plaintiff in such action, to add the amount of damages assessed by the verdict * * * interest on such amount, calculated at the legal rate from the date such suit was filed to the date of entering said judgment, and to include the same in said judgment as a part thereof. Colo. Rev.Stat.Ann. § 41–2–1 (1963).

As construed, this provision imparts no discretion to the trial court; it must be applied to any judgment resulting from an action for personal injuries. Johnson v. Enlow, 132 Colo. 101, 286 P.2d 630. *And see* Kinsella v. Leonard, *supra*. Stemple, as cross-appellant, recognizes that the elements comprising his measure of damages are based on Wyoming law, the place of injury, but contends that interest on these damages must be calculated according to the above-cited Colorado statute. Hays v. Arbuckle, 72 Colo. 328, 211 P. 101, is claimed to establish the rule that in Colorado interest on a judgment must be computed according to the law of the forum. In that case, the plaintiff recovered money lent to the defendant in California and the Colorado Supreme Court held that as an incident of the contractual recovery, "[t]he plaintiff below had the right to * * * have her damages measured by the legal rate of interest, according to the law of the place where the suit was brought." 211 P. at 102. As was held in North Drive-In Theatre Corp. v. Park-In Theatres, 10 Cir., 248 F.2d 232,

the Colorado case does establish a conflicts rule even though the net effect of the decision was but to apply the eight percent Colorado interest rate rather than the seven percent rate allowed in California.

The issue in this case however is whether to apply a statute allowing interest from the date of the complaint in a personal injury action, and Hays v. Arbuckle ruled only that the interest rate of the forum state shall be applied to determine the extent of damages in an action to recover an unpaid debt incurred in another state. The Colorado statute itself distinguishes between damages arising from personal injury and contractual or property damages. Interest is not permitted from the date of filing of the complaint where property damages are involved. *See* Kinsella v. Leonard, *supra*, 415 F.2d at 578. Therefore the conflicts rule established by Hays v. Arbuckle designating forum law to control recovery of interest on contractual claims does not include the present controversy within its intended scope.

Phillips argues that pre-judgment interest is an integral element of the measure of damages in a personal injury action and in such actions Colorado endorses the rule that the law of the place of the tort is controlling. Therefore, Phillips concludes, a Colorado court would not apply the rule providing pre-judgment interest to this controversy. And analysis from any direction generates support for this conclusion. As a practical matter, the addition of more than $20,000 to the amount of recovery —the pre-judgment interest in this case —tends to negative the characterization of the Colorado statute as procedural. Uniformity of result is not encouraged by application of the statute; the amount of recovery accorded a Wyoming citizen from injuries sustained in that state would be substantially augmented by the fortuitous presence of the tortfeasor in Colorado. By its operation, the Colorado statute creates a distinct advantage for the tort plaintiff by en-

couraging pre-trial settlement of claims and maximizing the benefit received in the event that a defendant fails to settle before trial. The state interest embodied in a statute so plainly enacted for the benefit of the injured party can hardly be violated by failure to apply the statute in favor of a non-resident plaintiff who enjoys virtually no legally cognizable relationship to the forum state. We must therefore conclude, as did the trial court, that in this case Colorado would apply the generally observed common law rule recognized by Wyoming allowing interest from the date of entry of judgment rather than enforce its contrary statute in favor of a non-resident plaintiff injured in the state of his residence and related to the forum only by virtue of the presence of the defendant within the forum state.

The judgment of the trial court is affirmed in all respects. Costs shall be taxed in accord with Federal Rules of Appellate Procedure 39, except that briefing costs applicable to the cross-appeal shall be taxed against Stemple.