Franz J. SCHOLZ and Ingeborg O. Scholz, Plaintiffs–Appellants/Cross–Appellees,

v.

METROPOLITAN PATHOLOGISTS, P.C., a Colorado corporation, Defendant–Appellee/Cross–Appellant.

No. 92SA277.

Supreme Court of Colorado, En Banc.

April 26, 1993.

Rehearing Denied June 7, 1993.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Ty Gee, Denver, Branney, Hillyard, Kudla and Jurdem, Joseph J. Branney, Neil Hillyard, John S. Portman, Englewood, for plaintiffs-appellants/cross-appellees.

Johnson, Ruddy, Norman & McConaty, P.C., Collie E. Norman, Thomas H. Anderson, Denver, for defendant-appellee/cross-appellant.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, amicus curiae, for Colorado Trial Lawyers Ass'n.

Davis, Graham & Stubbs, Andrew M. Low, Robert A. Gatter, Jr., Denver, amicus

curiae, for Physician Insurers Ass'n of America, amicus curiae, for American Tort Reform Ass'n.

Michael J. Norton, U.S. Atty., James W. Winchester, Sr. Litigation Counsel, Michael E. Hegarty, Denver, amicus curiae, for the U.S.

Chief Justice ROVIRA delivered the Opinion of the Court.

Franz and Ingeborg Scholz appeal the district court's ruling reducing the amount of damages awarded by a jury for noneconomic and derivative losses pursuant to the Health Care Availability Act ("HCAA"), sections 13–64–101 to –503, 6A C.R.S. (1992 Supp.), refusing to award prejudgment interest for future damages, and refusing to award all actual costs alleged to have been incurred by plaintiffs subsequent to defendant's refusal of a settlement offer.[1] We affirm in part and reverse in part.

## I

In 1989, Franz Scholz developed a bladder problem. Scholz was examined by Dr. Myron Yakely, a specialist in the field of urology, who opined that Scholz's problem was caused by an obstruction due to a reaction to medication Scholz was taking. Dr. Yakely's examination also revealed a hardened spot in the prostate. An ultrasound, which revealed nothing abnormal, and a biopsy were taken. The biopsy was analyzed by Dr. Howard Pirch, a specialist in the field of pathology and an employee of Metropolitan Pathologists, P.C. (Metropolitan). When Metropolitan gave the results of the biopsy to Dr. Yakely, he advised Scholz that they were positive for cancer.

As a result of this diagnosis, Scholz underwent surgery for the removal of his prostate gland. Approximately two weeks after the operation, Dr. Yakely informed Scholz that the operation had been unnecessary as Scholz never had prostate cancer. Dr. Yakely explained that the misdiagnosis was the result of Metropolitan's mislabeling of slides that were produced from the biopsy.

In 1990, the Scholzes filed suit alleging negligence against Dr. Yakely, Dr. Pirch, and Metropolitan. After learning of the genesis of the misdiagnosis, plaintiffs dismissed Drs. Pirch and Yakely from the suit, and added as a defendant Robert Cunningham, the lab technician responsible for labeling the slides.

The parties then entered into a pretrial stipulation for the dismissal of Cunningham as a defendant, while preserving plaintiffs' claim that the HCAA was inapplicable to this case. At the beginning of trial, Metropolitan admitted liability and the case went to the jury solely on the issue of damages. The jury awarded total damages of $1,416,829 to Mr. Scholz[2] and $159,250 to Mrs. Scholz on her derivative claim.[3]

Defendant then filed a motion for reduction of the jury verdict pursuant to the HCAA, arguing that plaintiffs' combined recovery for noneconomic and derivative damages was limited to $250,000. Plaintiffs argued that the HCAA was inapplicable to this case and, if the HCAA applied,

---

1. We ordered this case transferred to this court because the Scholzes' challenge the constitutionality of the HCAA. This appeal was taken prior to July 1, 1992, and therefore, the court of appeals lacked jurisdiction to resolve the questions concerning the constitutionality of the HCAA. *Compare* § 13–4–102(1)(b), 6A C.R.S. (1987) (court of appeals lacks jurisdiction over cases in which the constitutionality of a statute is in question) *and* § 13–4–102(1)(b), 6A C.R.S. (1992 Supp.) (court of appeals lacks jurisdiction over cases in which a statute has been declared unconstitutional) (effective July 1, 1992).

2. This award represents damages for the following:

| | |
|---|---|
| Past medical expenses | $ 15,000 |
| Past lost earnings | $255,829 |
| Past physical impairment | $200,000 |
| Past noneconomic loss | $500,000 |
| Future medical expenses | $ 21,000 |
| Future physical impairment | $170,000 |
| Future noneconomic loss | $255,000 |

3. This award represents damages for the following:

| | |
|---|---|
| Past economic loss | $ 750 |
| Past noneconomic loss | $100,000 |
| Future economic loss | $ 8,500 |
| Future noneconomic loss | $ 50,000 |

the provisions limiting the damage award were unconstitutional.

The district court denied plaintiffs' motion for entry of judgment on the jury verdict—applying the HCAA and rejecting plaintiffs' constitutional challenges. The court reduced the total noneconomic and derivative damages for both plaintiffs from $914,250 to $250,000. After the addition of prejudgment interest, judgment in favor of plaintiffs was entered in the total amount of $1,065,929.09. Defendant paid $1,000,-000 towards this judgment claiming that its total liability, including prejudgment interest, was limited to $1,000,000 under the HCAA.

## II

■ The first issue for review concerns whether the HCAA is applicable to this case. Plaintiffs argue that because the injuries they suffered were caused by Cunningham, an unlicensed, nonprofessional lab technician, the HCAA is inapplicable as Cunningham is not a "health care professional" as that term is defined in the HCAA. We disagree.

Section 13–64–302, 6A C.R.S. (1992 Supp.), provides, in pertinent part, that:

The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional ... or a health care institution ... shall not exceed one million dollars, present value per patient, including any derivative claim by any other claimant, of which not more than two hundred fifty thousand dollars, present value per patient including any derivative claim by any other claimant, shall be attributable to noneconomic loss or injury....

The HCAA defines a health care professional as "any person licensed in this state or any other state to practice medicine, chiropractic, nursing, physical therapy, po-

diatry, dentistry, pharmacy, optometry, or other healing arts. The term includes any professional corporation or other professional entity comprised of such health care providers as permitted by the laws of this state." § 13–64–202(4), 6A C.R.S. (1992 Supp.).[4]

■ The plain language of the statute indicates that any professional corporation or entity, which is comprised of the licensed health care professionals listed in the statute, is subject to the limits of the HCAA. Nothing in the definition of the HCAA suggests otherwise. Therefore, we conclude that based on the plain language of the statute, the HCAA is applicable to the present case.

Plaintiffs insist, however, that the inclusion of "professional corporations" and "professional entities" in the definition of a health care professional was intended only to prevent an injured plaintiff from avoiding the limitations of the HCAA by suing a professional entity rather than an individual who is expressly covered by the statute. We agree with plaintiffs insofar as their argument suggests that the definition of a health care professional precludes a plaintiff from avoiding the application of the HCAA through artful pleading. However, the statute clearly operates to preclude such an avoidance under the facts of this case. For example, the defendant has correctly observed that numerous, perhaps even the vast majority of, medical procedures require the assistance of unlicensed individuals such as Cunningham. In light of this fact, it is safe to assume that the legislature sought to prevent a plaintiff from naming some unlicensed employee whose conduct may have contributed to plaintiff's injuries as a defendant (in addition to the professional entity itself under a theory of *respondeat superior*) and thereby avoid application of the HCAA.

To hold otherwise, and accept plaintiffs' narrow application of the act, would clearly

---

**4.** We note that the term "health care institution" is defined as "any licensed or certified hospital, health care facility, dispensary, or other institution for the treatment or care of the sick or injured." § 13–64–202(3), 6A C.R.S. (1992 Supp.). Nowhere have the parties argued that Metropolitan is a health care institution. Furthermore, the record before us is inadequate to determine if Metropolitan falls within the scope of this term.

frustrate the General Assembly's intent, as expressed in the legislative declaration, in passing the HCAA's damage limitation provisions. "Perhaps the best guide to [ascertaining the General Assembly's] intent is the declaration of policy which frequently forms the initial part of a enactment." *St. Lukes Hosp. v. Industrial Comm'n,* 142 Colo. 28, 32, 349 P.2d 995, 997 (1960). The legislative declaration of the HCAA states:

> The general assembly determines and declares that it is in the best interests of the citizens of this state to assure the continued availability of adequate health care services to the people of this state by containing the significantly increasing costs of malpractice insurance for medical care institutions and licensed medical care professionals....

§ 13–64–102, 6A C.R.S. (1992 Supp.). In seeking to curb the increasing costs of malpractice insurance in this state, there is nothing in the HCAA which suggests the legislature sought to do so only by limiting recoveries for actions brought against licensed professionals or professional corporations and entities whose liability results solely from the conduct of those professionals. The reason that no such suggestion exists is clear: the negligent conduct of unlicensed employees, such as Cunningham, who contribute to providing health care services affects the insurance premiums that health care providers pay, just as the conduct of professionals within those entities does.[5] In short, the legislature did not distinguish between the status, *i.e.,* licensed/unlicensed, professional/nonprofessional, of health care providers when it sought to check the rising costs of malpractice insurance by including professional

corporations and entities within the coverage of the HCAA.

Thus, we find that the definition of a "health care professional" provided in the HCAA was intended to require the application of the statute under the circumstances presented here.

### III

Plaintiffs next argue that if the HCAA applies, the statute must be struck down as unconstitutional because it infringes on the right to a jury trial in civil cases, and violates the guarantees of equal protection and due process of the law.

We note at the outset that "statutes facing a constitutional challenge are presumed to be constitutional, and the party challenging the statute bears the burden of proving it to be unconstitutional beyond a reasonable doubt." *Firelock Inc. v. District Court,* 776 P.2d 1090, 1097 (Colo.1989). We hold that the plaintiffs have failed to meet this burden.[6]

### A

Plaintiffs' first argument is that in limiting the amount of damages that may be recovered by a plaintiff suing a health care professional, the HCAA unconstitutionally infringes on the right to a jury trial in civil cases. Plaintiffs concede, however, that if there is no right to a trial by jury in civil cases under the Colorado Constitution, then this constitutional challenge must fail.

Article II, section 23, of the Colorado Constitution provides that "[t]he right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all

---

**5.** It is significant to note that no findings regarding the negligent cause of plaintiffs' injuries were made in this case due to the stipulation of liability on the part of Metropolitan. Nor were there any findings regarding the degree of control a licensed professional may have had over Cunningham's activities. Consequently, it is not clear whether the failure of Metropolitan or Dr. Yakely to discover Cunningham's mistake in labeling the slides would amount to medical malpractice. It is clear, however, that the failure to detect the simple negligence of one person may, under certain circumstances, amount

to medical malpractice on the part of a licensed professional who has the right to control the conduct of that person. *See Adams v. Leidholt,* 195 Colo. 450, 579 P.2d 618 (1978) (adopting the "captain of the ship" doctrine).

**6.** Because we hold that the HCAA is both applicable and constitutional, we express no opinion regarding plaintiffs' challenge to the constitutionality of § 13–21–102.5, 6A C.R.S. (1987), which establishes limits on damages for noneconomic loss or injury in any civil action.

courts, or in criminal cases in courts not of record, may consist of less than twelve persons, as may be prescribed by law." For over a century this court has repeatedly held that this provision does not guarantee a trial by jury in civil cases as a matter of right. *See, e.g., State Farm Mut. Auto. Ins. v. Broadnax*, 827 P.2d 531 (Colo.1992); *Huston v. Wadsworth*, 5 Colo. 213 (1880).

Plaintiffs contend, however, that all of our prior cases that have held the state constitution does not provide for a jury trial in civil cases as a matter of right should be overruled by giving *City of Denver v. Hyatt*, 28 Colo. 129, 63 P. 403 (1900), preclusive effect over those decisions. We decline the invitation to overrule those cases, and reaffirm the fact that the Colorado Constitution does not guarantee a jury trial in civil cases as a matter of right. Accordingly, we overrule *Hyatt*. Because such a right does not exist under the Colorado Constitution, it logically follows that the HCAA's provisions limiting a plaintiff's ability to recover damages does not violate that "right."

#### B

▮▮▮ Plaintiffs next argue that the damage limitation provisions of the HCAA violate their right to equal protection of the laws.[7] The HCAA does not infringe on a fundamental right, nor does it create a classification based on race, religion, national origin, or gender. Thus, the HCAA must be reviewed under the rational basis test. *Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527 (Colo.1991). Under that test, a statute will not be found to violate equal protection guarantees so long as it is reasonable and bears a rational relationship to a legitimate state objective. *State v. DeFoor*, 824 P.2d 783, 787 (Colo.), *cert. denied sub nom. Pacheco v. DeFoor*, — U.S. —, 113 S.Ct. 483, 121 L.Ed.2d 387 & *DeFoor v. Colorado*, — U.S. —, 113

S.Ct. 483, 121 L.Ed.2d 387 (1992). A statute will be presumed constitutional under rational basis review and the party challenging the constitutionality of a law has the burden of proving its unconstitutionality beyond a reasonable doubt. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Harris v. The Ark*, 810 P.2d 226 (Colo.1991).

Plaintiffs argue that the HCAA violates equal protection because it "creates several arbitrary classifications." As two examples of such "arbitrary classifications" plaintiffs observe (1) that the HCAA treats individuals who suffer under $250,000 in noneconomic damages as a result of medical negligence differently from those who incur more than $250,000 in noneconomic damages and, (2) damage awards resulting from medical negligence, including derivative claims, are limited while awards resulting from other torts do not include derivative claims within their limits.

▮▮▮ Such observations do not amount to a showing that the HCAA violates the guarantee of equal protection of the laws: "[M]ost laws differentiate in some fashion between classes of persons ... [but] [a]s a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'" *Nordlinger v. Hahn*, — U.S. —, —, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961)); *DeFoor*, 824 P.2d at 790 (same). Consequently, the fact that the HCAA treats different people differently will not, as a general rule, render that statute unconstitutional on equal protection grounds. *Bushnell v. Sapp*, 194 Colo. 273, 280, 571 P.2d 1100, 1105 (1977) ("Classes can certainly be treated differently, so long as this unequal treatment is

---

**7.** While there is no explicit corollary in the Colorado Constitution to the Fourteenth Amendment of the United States Constitution, which guarantees the right to "equal protection," the right to equal protection is encompassed by the due process clause of the Colorado Constitution. *People v. Wilhelm*, 676 P.2d 702 (Colo.1984).

The analytic framework used to evaluate the right to equal protection—strict scrutiny, intermediate scrutiny, and rational basis—is the same under both the Colorado and federal constitutions. *See Harris v. The Ark*, 810 P.2d 226, 229–30 (Colo.1991).

based on reasonable differences."). Thus, to the extent that plaintiffs' equal protection challenge to the HCAA is premised on the unequal treatment of various tort victims, we reject their argument.[8]

Addressing the more familiar bases upon which statutes are challenged on equal protection grounds, we find that the HCAA clearly satisfies the rational basis test. The HCAA was enacted in 1988 in response to legislative findings which indicated severe problems concerning health care availability due to the rising costs of malpractice insurance premiums in Colorado. Given the current debate, both at the state and national levels, concerning the availability of health care, it can hardly be argued that the effort to increase the availability of health care is not a legitimate governmental interest. Similarly, it is reasonable to assume that the sometimes unpredictable and large damages that are awarded for noneconomic injuries contribute to the rising cost of malpractice insurance and thus, operate to limit the availability of health care services. Consequently, the concerns that prompted the General Assembly to pass the HCAA, as expressed in the declaration of intent as well as the legislative history of the act, reasonably support the passage of the act. The wisdom and effectiveness with which the HCAA might remedy the concerns sought to be addressed are, of course, not questions which this court will entertain, for "we do not sit as a 'super legislature' to weigh the propriety of ... legislation." *Colorado Soc. of Comm. & Inst. Psych. v. Lamm*, 741 P.2d 707, 712 (Colo.1987). Consequently, the damage limitation provisions of the HCAA do not violate the guarantee of equal protection of the laws.

C

■ Plaintiffs' last constitutional challenge alleges that the HCAA violates the right to due process of the laws. The argument appears to be that, because the HCAA imposes limits on potential damage awards, it inflicts a deprivation of property without a hearing.

■ The constitutional guarantee of due process is applicable to rights, not remedies. *Gibbes v. Zimmerman*, 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342 (1933) ("[A]lthough a vested cause of action is property and is protected from arbitrary interference, [appellants have] no property, in the constitutional sense, in any particular form of remedy; all that [they are] guaranteed by the Fourteenth Amendment is the preservation of [their] substantial rights to redress by some effective procedure.") (citations omitted); *DeFoor*, 824 P.2d at 792 (holding there is no right to a specific dollar remedy). Thus, the limitations on damage awards imposed by the HCAA do not violate a party's right to due process of the laws.

IV

■ Plaintiffs next argue that the trial court erred in refusing to increase the amount of awardable noneconomic damages from $250,000 to $500,000, pursuant to section 13–21–102.5(3)(a), 6A C.R.S. (1987). That section differs from the damage limitation provisions of the HCAA in two significant ways. First, section 13–21–102.5(3)(a) applies "in any civil action in which damages for noneconomic loss or injury may be awarded...." As such, the scope of section 13–21–102.5 is much broader than the damage limitations of the

---

**8.** In so holding, we follow numerous cases of this court which have held it to be within the prerogative of the General Assembly to classify and restrict recovery by various tort claimants. *See State v. DeFoor*, 824 P.2d 783 (Colo.1992) (disparate recovery classification in different sections of the same statute are constitutional when designed to provide a sound basis for fiscal planning and the computation of insurance premiums); *Allstate Ins. Co. v. Feghali*, 814 P.2d 863 (Colo.1991) (classification to aid in limiting auto insurance costs is an appropriate

legislative enactment); *Charlton v. Kimata*, 815 P.2d 946 (Colo.1991) (limiting damages for social host liquor liability permissible); *Bloomer v. Boulder County Bd. of Comm'rs*, 799 P.2d 942 (Colo.1990) (classification of tort recovery based on status of road not arbitrary); *Bushnell v. Sapp*, 194 Colo. 273, 571 P.2d 1100 (1977) ("no-fault" act elimination of some recovery for pain and suffering is for the legislature to determine, not the courts, and perfection in the classification is not constitutionally required).

HCAA, which apply only in certain types of civil actions against particular types of defendants. Second, section 13–21–102.5(3)(a) provides that, upon a showing by clear and convincing evidence, a damage award for noneconomic injury or loss may be increased to an amount not to exceed $500,-000. The HCAA contains no analogous provision.

Because section 13–21–102.5(3)(a) is a statute of general application and was passed prior to passage of the HCAA, it is not applicable to this case. *Climax Molybdenum Co. v. Walter,* 812 P.2d 1168, 1174 (Colo.1991) ("As a general rule, a special or specific statutory provision prevails over a general provision unless the general provision is later in time and the legislature has manifested a clear intent that the general provision should prevail"); *M.S. v. People,* 812 P.2d 632, 637 (Colo.1991) (if two statutes conflict, later statutes prevail over earlier ones). Thus, we hold the trial court did not err in refusing to increase the amount of awardable damages for noneconomic loss to $500,000, as no provision for doing so is contained in the HCAA.

### V

Plaintiffs next argue that the trial court erred in awarding prejudgment interest only for "past damages," and in refusing to award prejudgment interest for "future damages." We agree.

Section 13–21–101(1), 6A C.R.S. (1987) ("prejudgment interest statute"), provides, in part:

> In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of another person ... it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued.... When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount ... calculated from the date such suit was filed to the date of satisfying the judgment....

In *Seaward Construction Co., Inc. v. Bradley,* 817 P.2d 971, 972 (Colo.1991), we addressed the question "whether a plaintiff who is awarded punitive damages in a personal injury action is entitled to prejudgment interest on those damages." After considering the language of the statute as well as the legislative intent in enacting it, we concluded that "[a]bsent an express indication of legislative intent to deviate from the principle that prejudgment interest is compensatory, we construe section 13–21–101(1) to limit the base upon which prejudgment interest is to be calculated to 'damages for personal injuries sustained,' *i.e.,* compensatory damages." *Id.* at 978. We drew no distinction in *Seaward* between different forms of compensatory damages to which the prejudgment interest statute would apply. Rather, we held that because prejudgment interest is awarded, in part, so as to make an injured party whole, it is compensatory in nature and thus, should not apply to punitive damages (which are not compensatory but are awarded in order to punish a wrongdoer). *Id.* at 975.

Our unwillingness to distinguish between different forms of compensatory damages, *i.e.,* past and future damages, is entirely consistent with language of the prejudgment interest statute, which itself draws no such distinction. It simply speaks of "damages assessed," understood by this court to mean "compensatory damages," *id.,* and instructs the court to add interest to such damages.

Consequently, nothing in section 13–21–101(1) supports the trial court's differentiation between past and future damages for purposes of calculating and awarding prejudgment interest—it simply mandates the award of prejudgment interest for all compensatory damages assessed. *See Stemple v. Phillips Petroleum Co.,* 430 F.2d 178, 184 (10th Cir.1970) (section 13–21–101 "imparts no discretion to the trial court; it must be applied *to any judgment* resulting from an action for personal injuries") (emphasis added); *Huffman v. Caterpillar Tractor Co.,* 645 F.Supp. 909, 911 (D.Colo. 1986), *aff'd,* 908 F.2d 1470 (10th Cir.1990)

(same); *Mumford v. Hughes,* 852 P.2d 1289 (Colo.App.1992) *cert. denied,* June 7, 1993 (statute does not distinguish between prejudgment interest for past and future damages, nor did the General Assembly intend that courts draw such a distinction); *Stevens v. Humana of Delaware, Inc.,* 832 P.2d 1076 (Colo.App.1992) (same).

We are mindful of the issues surrounding the award of prejudgment interest to future damages and the varying conclusions reached by those who have considered the issue.[9] We find, however, that based on the language of the prejudgment interest statute, it is not for this court to reach its own conclusion regarding those issues but rather, to enforce the statute as written. If our conclusion here does not comport with the General Assembly's intention in passing the prejudgment interest statute it is the legislature, not the court, that must rewrite it.

Therefore, we hold that the trial court erred in distinguishing between past and future damages for purposes of the prejudgment interest statute and in only applying prejudgment interest for the amount of past damages awarded.

## VI

■ Plaintiffs next argue that the trial court erred in its award of actual costs pursuant to section 13–17–202(1)(a)(I), 6A C.R.S. (1992 Supp.). After trial, plaintiffs filed a motion for payment of actual costs and in support of this motion, submitted documentation which alleged that the total actual costs accrued after the offer of settlement was $11,869.97. The trial court, without explanation, then awarded plaintiffs $9,000 for their actual costs.

Section 13–17–202(1)(a)(I) provides that "[i]f the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of settlement to be paid by the defendant." Neither of the parties disputes the applicability of this

---

9. For example, some have concluded that an award of prejudgment interest for future, or unliquidated, damages should be allowed on the grounds that full compensation so requires. *See Funkhouser v. Preston Co.,* 290 U.S. 163, 168, 54 S.Ct. 134, 136, 78 L.Ed. 243 (1933):

It has been recognized that a distinction ... simply as between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award of damages.

(citations omitted); *State v. Phillips,* 470 P.2d 266, 274 (Alaska 1970) ("At the moment the cause of action accrued, the injured party was entitled to be left whole and became immediately entitled to be made whole.... All damages then, whether liquidated or unliquidated, pecuniary or nonpecuniary, should carry interest from the time the cause of action accrues....."). It has also been held that prejudgment interest should apply to future damages so as to account for the time value of money which is not paid until after judgment is entered. *See Busik v. Levine,* 63 N.J. 351, 307 A.2d 571, 576, *appeal dismissed, Levine v. Busik,* 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (allowing prejudgment interest for future damages and observing that for both past and future damages

"the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered").

Others have argued that an award of prejudgment interest for future damages results in overcompensation to injured parties, particularly when such damages have been reduced to present value as of the date of judgment. Patrick J. McDivitt, *Comment, Pre-Judgment Interest As An Element of Damages: Proposed Solutions for a Colorado Problem,* 49 U.Colo.L.Rev. 335, 340 ("The [1976] statute overcompensates plaintiffs for future losses because it permits interest to accrue on those losses from the time of filing the complaint, yet these future losses have been discounted to the time of judgment rather than to the time of filing the complaint."); Anthony E. Rothschild, *Comment, Prejudgment Interest: Survey and Suggestions,* 77 Nw.U.L.Rev. 192, 219 (1982):

A problem of overcompensation arises if the plaintiff can collect prejudgment interest on future damages discounted to present value as of the date of trial. If the trier of fact discounts future damages to the date of the incident, then an interest factor should be used to convert the damages from a date-of-incident value into a date-of-trial value. A more direct way to achieve the same result is to discount future damages only to the date of trial. No interest factor is then necessary for damages in date-of-trial dollars.

statute to the present case. Rather, their dispute centers on whether a court has any discretion in awarding actual costs under the statute.

We presume that the General Assembly, in enacting a statute, intends that the law will have just and reasonable results. § 2–4–201(1)(c), 1B C.R.S. (1980); *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991). "The provisions of section 13–17–202(3) are mandatory and nondiscretionary in many respects." *Centric–Jones Co. v. Hufnagel*, 848 P.2d 942, 947 (Colo.1993). The trial court has no discretion to refuse to award actual costs due to a party under the statute. However, to hold that a trial court has absolutely no discretion over the *amount* of actual costs awarded could lead to results that are manifestly unreasonable and unjust. In the absence of discretion, a party could compel a trial court to award actual costs no matter how unreasonable or unnecessary such expenses may have been. This would lead to the untenable result that a trial court award costs for expenses which never should have been incurred. *See Jorgensen v. Heinz*, 847 P.2d 181 (Colo. App.1992) (only "reasonable" actual costs should be awarded under section 13–17–202 in order to avoid absurd result). Therefore, we hold that a trial court need only award actual costs that are reasonably incurred by a party under section 13–17–202. Consequently, the fact that the trial court awarded actual costs in an amount less than what plaintiffs claimed as their actual costs is not per se error.

The trial court, however, made no findings that the actual costs alleged by plaintiffs were unreasonable. Rather, the court simply awarded $9,000 in actual costs without explanation. Though this award may in fact reflect only those actual costs reasonably incurred by plaintiffs, there is no way to determine this from the record before us. Consequently, the trial court should reconsider its award of actual costs pursuant to section 13–17–202(1)(a)(I) in light of this opinion, and should include in the record the basis for its final award.

## VII

In its cross-appeal, defendant argues that the trial court erred in its determination of the total amount of damages awardable to plaintiffs under the HCAA because the award was greater than $1 million. The trial court determined that the total award to plaintiffs, before costs and prejudgment interest were added, would be $911,829. The trial court then determined that $720,829 of this total represented "past damages," and therefore was subject to prejudgment interest totaling $154,100.09. The trial court added the amount of prejudgment interest to the total award of $911,829, and concluded that, prior to the addition of costs, plaintiffs were entitled to recover $1,065,929.09 from defendant.

Section 13–64–302 provides, in pertinent part, that "[t]he total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a ... health care institution ... *whether past damages, future damages, or a combination of both,* shall not exceed one million dollars...." (Emphasis added.) Defendant argues that prejudgment interest is a form of "compensatory damages" and thus falls within the scope of the HCAA.

The fact that prejudgment interest is a form of compensatory damages is irrelevant to the question of whether such damages are included within the HCAA's $1 million cap. *Cf. Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936 (Colo.1993) (prejudgment interest properly excluded from county court jurisdictional cap on claims for damages not exceeding $5,000). Nowhere in the HCAA are damages defined as "compensatory" damages, nor is there any indication that the General Assembly intended to include all damages within the $1 million cap so long as they could be defined as "compensatory." Rather, the HCAA's $1 million total damage cap applies to "past damages, future damages, or a combination of both." Thus, the fact that prejudgment interest is a form of compensatory damages, *see Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo.1990), says noth-

ing about whether prejudgment interest is to be included within the HCAA's $1 million cap. We therefore reject defendant's argument. The question remains, however, whether prejudgment interest is included within the damage limitation provisions of the HCAA. We hold that it is not.

■ It is significant to note first, that the prejudgment interest statute was enacted prior to the passage of the HCAA. Consequently, we assume that the General Assembly was aware of the provisions of the prejudgment interest statute when it passed the HCAA. *People v. Green*, 734 P.2d 616 (Colo.1987). Second, we will not assume that the General Assembly intended to abolish or otherwise abrogate a preexisting law without a clear expression of its intent to do so. *Uzzell v. Lunney*, 46 Colo. 403, 418, 104 P. 945, 950 (1909) ("It is ... presumed that the legislature does not intend to make any change in the existing law beyond what it expressly declares."). Finally, when two statutes apparently conflict, a court will strive to read them harmoniously so as to give effect to both. *Riley v. People*, 828 P.2d 254 (Colo.1992).

Guided by these principles of interpretation, we find that prejudgment interest is not included in the $1 million damage cap of the HCAA. In so holding, both the HCAA and the prejudgment interest statute can be given effect. The prejudgment interest statute applies to "all civil cases" and thus, absent the provisions of the HCAA, would clearly apply in the present case. Thus, allowing an award for prejudgment interest in this case gives effect to the prejudgment interest statute. Similarly, the damage cap provisions of the HCAA have been given effect in this case, and have operated to reduce the total amount of awardable damages to plaintiffs. Thus, by holding that prejudgment interest is not included in the $1 million cap, both statutes have been given effect. To read the HCAA as limiting the award of prejudgment interest in this case, in contrast, would do violence to the plain language of the prejudgment interest statute. This we decline to do.

Moreover, because the prejudgment interest statute applies to all civil cases irrespective of the amount of damages awarded, interpreting the HCAA to limit such interest in the present case to the extent that prejudgment interest would result in awardable damages in excess of $1 million would require a change in the law which existed at the time of the HCAA's passage. Nothing in the HCAA evinces the legislature's express intent to change the law as it existed prior to passage of the HCAA in this regard, and we will not infer from the language of the HCAA the legislature's intent to do so. *See Uzzell v. Lunney*, 46 Colo. at 418, 104 P. at 950.

Therefore, we conclude that the $1 million total damage limitation of the HCAA does not include the amount awarded pursuant to the prejudgment interest statute.

## VIII

In conclusion, we hold that the HCAA applies to the facts of this case and that its damage limitation provisions are constitutional. We also hold that the prejudgment interest statute applies both to future and past damages, but that prejudgment interest is not to be included in applying the $1 million damage cap of the HCAA. In addition, we hold that the trial court did not err in refusing to increase the total amount of awardable noneconomic and derivative damages from $250,000 to $500,000, as no provision for doing so is contained in the HCAA. Finally, we hold that the trial court should reconsider its award of actual costs pursuant to section 13–17–202(1)(a)(I) in light of this opinion, and should include in the record the basis for its award.

Therefore, we affirm in part and reverse in part, and remand the case to the district court with directions to reconsider its rulings in conformity with the opinions expressed herein.

LOHR, J., concurs in part and dissents in part.

Justice LOHR concurring in part and dissenting in part:

I respectfully dissent from part V of the majority opinion, but concur with the judg-

**912**

ment of the court in all other respects. The majority in part V holds that the prejudgment interest statute, § 13–21–101(1), 6A C.R.S. (1987), permits the recovery of prejudgment interest for future damages found by a trier of fact in a suit governed by the Health Care Availability Act (the HCAA), §§ 13–64–101 to 13–64–503, 6A C.R.S. (1992 Supp.). The HCAA is a later enacted and more specific statute than the prejudgment interest statute, and thus the express purpose and provisions of the HCAA should guide the application of the prejudgment interest statute in suits governed by the HCAA. *See M.S. v. People,* 812 P.2d 632, 637 (Colo.1991).

The HCAA attempts to curb the "significantly increasing costs of malpractice insurance," § 13–64–102, by setting limits in medical malpractice cases on the award of damages, including compensatory damages, § 13–64–302, and by "[e]ffectuat[ing] more precise awards of damages for actual losses," § 13–64–201(1)(b). The HCAA defines "future damages" as "damages of any kind arising from personal injuries which the trier of fact finds will accrue after the damages findings are made," § 13–64–202(2), and the HCAA requires the trier of fact to determine the present value of future damages and to make separate findings for each claimant specifying the amount of such damages, § 13–64–204(1)(b), 13–64–205(1)(d). These findings provide the basis for the entry of judgment for future damages. *See* § 13–64–205(1)(d), (e), (f).

The overcompensation of a claimant by an award of prejudgment interest for future damages [1] in a case governed by the HCAA is plainly inconsistent with the purpose of the HCAA. In addition, because the HCAA requires in every case governed

by it a specific finding of the present value of future damages accruing after the damages findings are made, the HCAA places the trial court in a perfect position to effectuate the purpose of the HCAA by making a more precise award of damages for actual losses. I would therefore affirm the trial court's ruling not to award prejudgment interest for future damages in this case, and I would hold generally that the HCAA does not permit in cases governed by it the recovery of prejudgment interest for future damages.

1. For example, suppose on Day 100 a finding is made that were it not for his injury a claimant would have received as income $10,000 on Day 465, and that there are no other damages at all besides this loss of $10,000 in future income. In such a case, the claimant would be made whole by an award on Day 100 of the present value of receiving $10,000 on Day 465, which, for the sake of simplicity, let us assume is $9,000. If, instead, the claimant on Day 100 receives $9,000 plus the interest that would have

accrued on $9,000 if it had been invested since the date the suit was filed, then the claimant will be overcompensated, which is to say, the claimant will receive on Day 100 an amount (let us assume $9,900) whose present value is greater than the present value of his damages. *Cf.* Patrick J. McDivitt, *Comment, Pre–Judgment Interest as an Element of Damages: Proposed Solutions for a Colorado Problem,* 49 U.Colo.L.Rev. 335, 338–341 (1978).